DELTA TAU DELTA, BETA ALPHA CHAPTER, and Delta Tau Delta, National Fraternity, Appellants (Defendants Below),

v.

Tracey D. JOHNSON Appellee (Plaintiff Below),

Joseph P. Motz, Non-appealing party (Defendant below).

No. 49S02–9601–CV–40.

Supreme Court of Indiana.

July 12, 1999.

Norman T. Funk, Hill, Fulwider, McDowell, Funk & Matthews, Indianapolis, Indiana, Attorney for Appellant Delta Tau Delta, National Fraternity.

Douglas B. King, Michael Rabinowitch, Wooden & McLaughlin, Indianapolis, Indiana, Attorneys for Appellant Delta Tau Delta, Beta Alpha Chapter.

Ronald E. Elberger, C. Joseph Russell, George T. Patton, Jr., Scott A. Weathers, Bose McKinney & Evans, Indianapolis, Indiana, Attorneys for Appellee.

**ON CIVIL PETITION FOR TRANSFER**

SELBY, J.

The present case asks us to determine whether the trial court, in a negligence action, properly denied a motion for summary judgment on the issue of duty.[1] After being

---

**1.** Along with this opinion today, we issue opinions in two other cases, *Vernon v. Kroger*, 712 N.E.2d 976 (Ind.1999) and *L.W. v. Western Golf Ass'n*, 712 N.E.2d 983 (Ind.1999), addressing whether landowners or occupiers of land owe invitees a duty to provide reasonable protection against the foreseeable criminal acts of third parties.

sexually assaulted in a fraternity house where she had attended a party, Tracey Johnson ("Johnson") brought a civil claim against the perpetrator, Joseph Motz ("Motz");[2] Delta Tau Delta, Beta Alpha Chapter ("DTD"), the fraternity at which the party and sexual assault occurred; and Delta Tau Delta, National Fraternity ("National"). Johnson claims that both DTD and National breached a duty of care owed to her and that DTD violated the Dram Shop Act. Both DTD and National filed motions for summary judgment on the grounds that neither owed Johnson a duty of care, and DTD also asserted that it did not commit a Dram Shop violation; both motions were denied. On interlocutory appeal, the Court of Appeals reversed both denials of summary judgment on all issues. *Motz v. Johnson*, 651 N.E.2d 1163 (Ind.Ct.App.1995). We earlier granted transfer and now address the following issues: (1) whether DTD owed Johnson a common law duty of reasonable care; (2) whether Johnson may proceed on a Dram Shop claim against DTD; and (3) whether National gratuitously assumed a duty of care towards Johnson. Because we answer the first issue affirmatively and the other two negatively, we affirm in part, reverse in part, and remand to the trial court.

### FACTS

DTD is a fraternity on the campus of Indiana University at Bloomington; it is the local chapter of Delta Tau Delta, National Fraternity. On the evening of October 13, 1990, Johnson, an undergraduate student at Indiana University, attended a party at DTD's house. Johnson had been invited to the party by a member of DTD. She arrived at the party around 10:00 p.m. with some friends who had also been invited. At the party, beer was served in a downstairs courtyard area of the house. Pledges drew beer from a keg into pitchers, which they then poured into cups to serve to guests. The courtyard was very crowded and rather chaotic. Around midnight, Johnson and her friends were about to leave when she encountered Motz, an alumnus of the fraternity and an acquaintance of hers.

Motz had driven into Bloomington that day. After going to a football game, Motz bought a case of beer which he brought back to the chapter house. He stored his beer in room C17. Prior to meeting Johnson, Motz drank four or five of his beers.

While Johnson and Motz were talking, Johnson's friends wandered off and she was unable to find them. Motz offered to drive her home, but only after he had sobered up. Johnson accepted the offer. They waited together in room C17 where they both had some drinks of hard liquor, talked, and listened to music with other guests.

Between 3:30 a.m. and 4:00 a.m., Johnson again searched for a ride home. When she was unsuccessful, Motz reaffirmed his offer to drive her home, but only after he sobered up. Soon thereafter, Motz locked himself and Johnson in the room. He then sexually assaulted Johnson.

### DISCUSSION

#### I. STANDARD OF REVIEW

■ When reviewing the denial of a summary judgment motion, this Court faces the summary judgment motion in the same posture as did the trial court. *Hooks SuperX, Inc. v. McLaughlin*, 642 N.E.2d 514, 516 (Ind.1994). "We must view the facts liberally and in the light most favorable to the nonmovant." *Wior v. Anchor Indus., Inc.*, 669 N.E.2d 172, 177 n. 4 (Ind.1996). Summary judgment will be granted only "if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ind. Trial Rule 56(C).

#### II. NEGLIGENCE

■ The first issue in this appeal is whether the trial court was correct to deny DTD's motion for summary judgment on Johnson's negligence claim. To establish a claim of negligence, a plaintiff must show: (1) that the defendant owed the plaintiff a duty, (2) that the defendant breached that

---

**2.** Joseph Motz, who pled guilty to sexual battery in a separate proceeding, is not a party to this appeal.

duty, and (3) that the breach proximately caused the plaintiff's injury. *Webb v. Jarvis,* 575 N.E.2d 992, 995 (Ind.1991). In this case, Johnson argues that DTD owed its guests a duty of reasonable care, for example, by providing reasonable protection, security, and supervision at the party, that DTD breached its duty, and that the breach proximately caused her injuries. DTD moved for summary judgment on the issue of duty, arguing that it owed no duty to protect Johnson from the unforeseeable criminal acts of a third party. Determining whether one party owes a duty to another is a question of law for the court. *Hooks SuperX,* 642 N.E.2d at 517. As such, we will determine, de novo, whether DTD owed a duty to Johnson and, thus, whether the trial court correctly denied DTD's motion for summary judgment.[3]

■ In *Burrell v. Meads,* this Court held that a social guest who has been invited by a landowner onto the landowner's land is to be treated as an invitee. 569 N.E.2d 637, 643 (Ind.1991). Thus, a social host owes his guests the duty to exercise reasonable care for their protection. *Id.* The issue in this case is whether a landowner may have a duty to take reasonable care to protect an invitee from the criminal acts of a third party.[4] This issue is one that we have not addressed recently and one which has resulted in some disagreement in the Court of Appeals.

The question of whether and to what extent landowners owe any duty to protect their invitees from the criminal acts of third parties has been the subject of substantial debate among the courts and legal scholars in the past decade. *See, e.g., McClung v. Delta Square Ltd. Partnership,* 937 S.W.2d 891, 897 (Tenn.1996) (noting that the debate caused the court to reconsider its law in this area). The majority of courts that have ad-

dressed this issue agree that, while landowners are not to be made the insurers of their invitees' safety, landowners do have a duty to take reasonable precautions to protect their invitees from foreseeable criminal attacks. *See id.* at 898–99. Indiana courts have not held otherwise. *See Kinsey v. Bray,* 596 N.E.2d 938 (Ind.Ct.App.1992).

A further question arises, however, in that courts employ different approaches to determine whether a criminal act was foreseeable such that a landowner owed a duty to take reasonable care to protect an invitee from the criminal act. There are four basic approaches that courts use to determine foreseeability in this context: (1) the specific harm test, (2) the prior similar incidents test, (3) the totality of the circumstances test, and (4) the balancing test. *See generally Krier v. Safeway Stores 46, Inc.,* 943 P.2d 405 (Wyo. 1997); *McClung,* 937 S.W.2d at 899–901; *Boren v. Worthen Nat'l Bank,* 324 Ark. 416, 921 S.W.2d 934, 940–41 (1996); *Ann M. v. Pacific Plaza Shopping Ctr.,* 6 Cal.4th 666, 25 Cal.Rptr.2d 137, 863 P.2d 207, 215–16 (1993); Michael J. Yelnosky, Comments, *Business Inviters' Duty to Protect Invitees from Criminal Acts,* 134 U. Pa. L.Rev. 883, 891–900 (1986).

Under the specific harm test, a landowner owes no duty unless the owner knew or should have known that the specific harm was occurring or was about to occur. *See McClung,* 937 S.W.2d at 895; *Boren,* 921 S.W.2d at 940. Most courts are unwilling to hold that a criminal act is foreseeable only in these situations. *See McClung,* 937 S.W.2d at 899 (abrogating *Cornpropst v. Sloan,* 528 S.W.2d 188, 198 (Tenn.1975) which had employed this test); *Boren,* 921 S.W.2d at 940.

3. The summary judgment motion filed by DTD addressed only whether it owed a duty of care toward Johnson. Thus, neither breach nor proximate cause are before us on this appeal.

4. In this case, Johnson was invited to the party by a member of DTD, and the sexual assault occurred in DTD's house. Thus, she is an invitee, and DTD, as the landowner, owed her a duty to exercise reasonable care for her protection. Having already determined in *Burrell v. Meads,* 569 N.E.2d 637 (Ind.1991) that such a duty exists, we need not formally use the three factor balancing test as enunciated in *Webb v. Jarvis,*

575 N.E.2d 992 (Ind.1991) (holding that whether a duty exists is determined by balancing three factors: the relationship between the parties, the foreseeability of the occurrence, and public policy concerns). The issue in this case is when, if ever, does that duty extend to criminal acts by third parties. Looked at under the *Webb* framework, our holding in *Burrell* implicitly determined that two of the three factors, relationship and public policy, weighed in favor of establishing a duty between a social host and his invited guest. The only issue remaining in this case is foreseeability.

Under the prior similar incidents (PSI) test, a landowner may owe a duty of reasonable care if evidence of prior similar incidents of crime on or near the landowner's property shows that the crime in question was foreseeable. *See McClung*, 937 S.W.2d at 899; *Boren*, 921 S.W.2d at 940–41. Although courts differ in the application of this rule, all agree that the important factors to consider are the number of prior incidents, their proximity in time and location to the present crime, and the similarity of the crimes. *See McClung*, 937 S.W.2d at 899; *Boren*, 921 S.W.2d at 941. Courts differ in terms of how proximate and similar the prior crimes are required to be as compared to the current crime. *Compare Baptist Mem'l Hosp. v. Gosa*, 686 So.2d 1147 (Ala.1996) (employing a strict PSI test; holding that, although there were 57 crimes reported over a five year period, only six involved a physical touching and, therefore, the assault of someone with a gun was unforeseeable) *with Sturbridge Partners, Ltd. v. Walker*, 267 Ga. 785, 482 S.E.2d 339 (1997) (employing a liberal PSI test; holding that two prior burglaries of apartments was sufficient to make a rape in an apartment foreseeable). While this approach establishes a relatively clear line when landowner liability will attach, many courts have rejected this test for public policy reasons. *See Isaacs v. Huntington Mem'l Hosp.*, 38 Cal.3d 112, 211 Cal. Rptr. 356, 695 P.2d 653, 658–59 (1985), *modified by Ann M. v. Pacific Plaza Shopping Ctr.*, 6 Cal.4th 666, 25 Cal.Rptr.2d 137, 863 P.2d 207 (1993); *Maguire v. Hilton Hotels Corp.*, 79 Hawai'i 110, 899 P.2d 393, 400 (1995); *Sharp v. W.H. Moore Inc.*, 118 Idaho 297, 796 P.2d 506, 510–11 (1990); *Seibert v. Vic Regnier Builders, Inc.*, 253 Kan. 540, 856 P.2d 1332, 1339 (1993); *Gans v. Parkview Plaza Partnership*, 253 Neb. 373, 571 N.W.2d 261, 268 (1997); *Doud v. Las Vegas Hilton Corp.*, 109 Nev. 1096, 864 P.2d 796, 800 (1993); *Clohesy v. Food Circus Supermarkets, Inc.*, 149 N.J. 496, 694 A.2d 1017, 1023 (1997); *Small v. McKennan*, 403 N.W.2d 410, 413 (S.D.1987), *aff'd*, 437 N.W.2d 194, 201 (S.D.1989). The public policy considerations are that under the PSI test the first victim in all instances is not entitled to recover, landowners have no incentive to implement even nominal security measures, the test incorrectly focuses on the specific crime and not the general risk of foreseeable

harm, and the lack of prior similar incidents relieves a defendant of liability when the criminal act was, in fact, foreseeable. *Id.*

Under the totality of the circumstances test, a court considers all of the circumstances surrounding an event, including the nature, condition, and location of the land, as well as prior similar incidents, to determine whether a criminal act was foreseeable. *See Isaacs*, 211 Cal.Rptr. 356, 695 P.2d at 659–61; *Maguire*, 899 P.2d at 399; *Seibert*, 856 P.2d at 1339; *Whittaker v. Saraceno*, 418 Mass. 196, 635 N.E.2d 1185, 1188 (1994); *Gans*, 571 N.W.2d at 268–69; *Doud*, 864 P.2d at 800; *Clohesy*, 694 A.2d at 1023; *Small v. McKennan*, 437 N.W.2d 194, 200–01 (S.D.1989). Courts that employ this test usually do so out of dissatisfaction with the limitations of the prior similar incidents test. *See Isaacs*, 211 Cal.Rptr. 356, 695 P.2d at 658–59; *Maguire*, 899 P.2d at 399; *Sharp*, 796 P.2d at 510–11; *Seibert*, 856 P.2d at 1339; *Gans*, 571 N.W.2d at 268; *Doud*, 864 P.2d at 800; *Clohesy*, 694 A.2d at 1023; *Small*, 403 N.W.2d at 413. The most frequently cited limitation of this test is that it tends to make the foreseeability question too broad and unpredictable, effectively requiring that landowners anticipate crime. *See McClung*, 937 S.W.2d at 900 (adopting the balancing test); *Ann M.*, 25 Cal.Rptr.2d 137, 863 P.2d at 214–15 (reconsidering and rejecting the totality of the circumstances test in favor of the balancing test).

Under the final approach, the balancing test, a court balances "the degree of foreseeability of harm against the burden of the duty to be imposed." *McClung*, 937 S.W.2d at 901; *see Ann M.*, 25 Cal.Rptr.2d 137, 863 P.2d at 215. In other words, as the foreseeability and degree of potential harm increase, so, too, does the duty to prevent against it. *Id.* This test still relies largely on prior similar incidents in order to ensure that an undue burden is not placed upon landowners. *Id.*

We agree with those courts that decline to employ the specific harm test and prior similar incidents test. We find that the specific harm test is too limited in its determination of when a criminal act is foreseeable. While the prior similar incidents test has certain appeal, we find that this test has the poten-

tial to unfairly relieve landowners of liability in some circumstances when the criminal act was reasonably foreseeable.

As between the totality of the circumstances and balancing tests, we find that the totality of the circumstances test is the more appropriate. The balancing test seems to require that the court ask whether the precautions which plaintiff asserts should have been taken were unreasonably withheld given the foreseeability of the criminal attack. In other words, the question is whether defendant took reasonable precautions given the circumstances. We believe that this is basically a breach of duty evaluation and is best left for the jury to decide.

On the other hand, the totality of the circumstances test permits courts to consider all of the circumstances to determine duty. In our view and the view of other state supreme courts, the totality of the circumstances test does not impose on landowners the duty to ensure an invitee's safety, but requires landowners to take *reasonable* precautions to prevent *foreseeable* criminal acts against invitees.[5] *See Maguire v. Hilton Hotels Corp.*, 79 Hawai'i 110, 899 P.2d 393 (1995); *Sharp v. W.H. Moore, Inc.*, 118 Idaho 297, 796 P.2d 506 (1990); *Seibert v. Vic Regnier Builders, Inc.*, 253 Kan. 540, 856 P.2d 1332 (1993); *Whittaker v. Saraceno*, 418 Mass. 196, 635 N.E.2d 1185 (1994); *Gans v. Parkview Plaza Partnership*, 253 Neb. 373, 571 N.W.2d 261 (1997); *Doud v. Las Vegas Hilton Corp.*, 109 Nev. 1096, 864 P.2d 796 (Nev.1993); *Clohesy v. Food Circus Supermarkets, Inc.*, 149 N.J. 496, 694 A.2d 1017 (1997); *Small v. McKennan Hosp.*, 403 N.W.2d 410 (S.D.1987), *aff'd*, 437 N.W.2d 194 (S.D.1989). A substantial factor in the determination of duty is the number, nature, and location of prior similar incidents, but the

lack of prior similar incidents will not preclude a claim where the landowner knew or should have known that the criminal act was foreseeable. The advantage of the totality of the circumstances approach is that it incorporates the specific harm and prior similar incidents tests as factors to consider when determining whether the landowner owed a duty to an injured invitee without artificially and arbitrarily limiting the inquiry. Therefore, we now explicitly state that Indiana courts confronted with the issue of whether a landowner owes a duty to take reasonable care to protect an invitee from the criminal acts of a third party should apply the totality of the circumstances test to determine whether the crime in question was foreseeable.[6]

Applying the totality of the circumstances test to the facts of this case, we hold that DTD owed Johnson a duty of reasonable care. Within two years of this case, two specific incidents occurred which warrant consideration. First, in March 1988, a student was assaulted by a fraternity member during an alcohol party at DTD. Second, in April 1989 at DTD, a blindfolded female was made, against her will, to drink alcohol until she was sick and was pulled up out of the chair and spanked when she refused to drink. In addition, the month before this sexual assault occurred, DTD was provided with information from National concerning rape and sexual assault on college campuses.[7] Amongst other information, DTD was made aware that "1 in 4 college women have either been raped or suffered attempted rape," that "75% of male students and 55% of female students involved in date rape had been drinking or using drugs," that "the group most likely to commit gang rape on the col-

---

**5.** In *Burrell*, 569 N.E.2d at 639–640, this Court expressly adopted the definition of duty as stated in Restatement (Second) of Torts section 343 (1965) and found that a landowner had a duty to exercise reasonable care to protect an invitee while the invitee was on the landowner's premises.

**6.** We note in passing that this is not the sole means by which a plaintiff may establish that a landowner owed plaintiff a duty. For example, a landowner may also voluntarily or contractually assume a duty to protect a plaintiff from criminal acts. *See, e.g., Nalls v. Blank*, 571 N.E.2d 1321,

1323 (Ind.Ct.App.1991) (finding that landlord had assumed the duty to provide security); *Vertucci v. NHP Management Co.*, 701 N.E.2d 604, 606 (Ind.Ct.App.1998) (finding that "the exculpatory clause [in the lease agreement did] not prevent [the defendant] from having or assuming a duty to protect [the plaintiff] from the criminal acts of a third party").

**7.** This information was provided as part of a workshop pamphlet. The workshop pamphlet was prepared for and given out at the fraternity's convention in August 1990. DTD had members in attendance at the convention.

lege campus was the fraternity," and that fraternities at seven universities had "recently experienced legal action taken against them · for rape and/or sexual assault." (S.S.R. at 6–7.) We believe that to hold that a sexual assault in this situation was not foreseeable, as a matter of law, would ignore the facts and allow DTD to flaunt the warning signs at the risk of all of its guests.

As a landowner under these facts, DTD owed Johnson a.duty to take reasonable care to protect her from a foreseeable sexual assault. It is now for the jury to decide whether DTD breached this duty, and, if so, whether the breach proximately caused Johnson's injury. While this may be the exceptional case wherein a landowner in a social host situation is held to have a duty to take reasonable care to protect an invitee from the criminal acts of another,[8] when the landowner is in a position to take reasonable precautions to protect his guest from a foreseeable criminal act, courts should not hesitate to hold that a duty exists.[9]

### III. DRAMSHOP CLAIM

■ As a second basis for holding DTD liable, Johnson argues that DTD served alcohol in violation of Indiana's Dram Shop Act. Johnson contends that there exist genuine issues of material fact concerning whether DTD furnished alcohol to ·Motz with the knowledge that he was intoxicated and whether Motz' intoxication was a proximate cause of her injury. For this reason, Johnson concludes that the trial court was correct to deny summary judgment.

Indiana's Dram Shop Act statutorily allows for civil liability in certain situations when one furnishes alcohol to another who then causes an injury due to their intoxication. Specifically, this Act provides that:

(b) A person who furnishes an alcoholic beverage to a person is not liable in a civil action for damages caused by the impairment or intoxication of the person who was furnished the alcoholic beverage unless:

(1) the person furnishing the alcoholic beverage had actual knowledge that the person to whom the alcoholic beverage was furnished was visibly intoxicated at the time the alcoholic beverage was furnished; and

(2) the intoxication of the person to whom the alcoholic beverage was furnished was a proximate cause of the death, injury, or damage alleged in the complaint.

IND.CODE § 7.1–5–10–15.5 (1998).

■ The first step, therefore, is to determine whether the person furnishing the alcohol had actual knowledge that they were furnishing alcohol to an intoxicated individual. The furnisher's knowledge must be judged by a subjective standard. See Gariup Constr. Co. v. Foster, 519 N.E.2d 1224, 1229 (Ind.1988). Absent an admission that the person furnishing alcohol had actual knowledge of the other's intoxication, the trier of fact must look to reasonable inferences based upon an examination of the surrounding circumstances. See id. at 1230; Booker, Inc. v. Morrill, 639 N.E.2d 358, 362 (Ind.Ct.App.1994). Actual knowledge of intoxication can be inferred from indirect or circumstantial evidence such as "what and how much the person was known to have consumed, the time involved, the person's behavior at the time, and the person's condition shortly after leaving." Booker, 639 N.E.2d at 362. Where, however, there is insufficient evidence to support actual knowledge, the issue may be resolved as a matter of law. See Baxter v. Galligher, 604 N.E.2d 1245, 1248 (Ind.Ct.App.1992); Muex v. Hindel Bowling Lanes, Inc., 596 N.E.2d 263, 266 (Ind.Ct.App.1992).

·The evidence, examined in the light most favorable to the non-movant Johnson, is insufficient to support this claim. Given that · DTD had pledges serving alcohol in cups in the downstairs courtyard and that Johnson saw Motz drinking from a cup one could infer that Motz was drinking alcohol that had been furnished by the fraternity. There is no evidence, however, to show that a pledge furnished Motz with alcohol; nor does the record contain any evidence that the pledge would have known that Motz was intoxicated when the alcohol was furnished. Motz states he was intoxicated and the record shows that he may have been more talkative than usual,

---

8. See Husband v. Dubose, 26 Mass.App.Ct. 667, 531 N.E.2d 600 (1988)

9. See Kinsey v. Bray, 596 N.E.2d 938 (Ind.Ct. App.1992).

but he was not rowdy or stumbling or having verbal difficulties. In other words, even if one assumes that a member of DTD furnished Motz with alcohol, there is no evidence that Motz exhibited visible signs of intoxication for a pledge to notice. Because we find that there was insufficient evidence to support actual knowledge, we need not address whether Motz's intoxication was the proximate cause of the incident.

## IV. GRATUITOUS ASSUMPTION OF DUTY

 The final issue which Johnson raises is whether National owed her a duty of care. Johnson contends that genuine issues of material fact exist concerning whether National assumed such a duty. Specifically, Johnson argues that National undertook actions which raise the inference that it assumed a duty to protect against date rape and alcohol abuse. Thus, she concludes, the trial court was correct to deny National's motion for summary judgment.

 "A duty of care may ... arise where one party assumes such a duty, either gratuitously or voluntarily. The assumption of such a duty creates a special relationship between the parties and a corresponding duty to act in the manner of a reasonably prudent person." *Plan–Tec, Inc. v. Wiggins*, 443 N.E.2d 1212, 1219 (Ind.Ct.App.1983) (citations omitted). The existence and extent of such a duty is ordinarily a question of fact for the trier of fact. *See Plan–Tec*, 443 N.E.2d at 1220; *Tincher v. Greencastle Fed. Sav. Bank*, 580 N.E.2d 268, 273 (Ind.Ct.App. 1991). However, when the record contains insufficient evidence to establish such a duty, the court will decide the issue as a matter of law. *See Teitge v. Remy Constr. Co.*, 526 N.E.2d 1008, 1014–15 (Ind.Ct.App.1988); *Robinson v. Kinnick*, 548 N.E.2d 1167, 1169 (Ind.Ct.App.1989).

Johnson urges that we allow this issue to proceed to the jury. To support her claim, Johnson cites to the Court of Appeals' ruling in *Ember v. B.F.D., Inc.*, 490 N.E.2d 764 (Ind.Ct.App.1986), *modified*, 521 N.E.2d 981 (Ind.Ct.App.1988). In *Ember*, a tavern dis-

tributed flyers throughout its neighborhood asking the residents to call the tavern if anyone was disturbing them, even if the trouble had nothing to do with the tavern. Also, the tavern informed the neighborhood that the tavern would provide patrols for the area. Furthermore, one of the pub's security officers had, in the past, helped out with a neighborhood problem unrelated to the pub. Thus, when a person was attacked across the street from the tavern, the jury was permitted to determine whether the tavern had assumed a duty to protect persons within the vicinity of the tavern. *Id.* at 770.

We do not agree with Johnson that this situation is like that in *Ember* and other cases which allow the issue of assumption of duty to proceed to the jury. Instead, we hold that insufficient evidence exists for this issue to proceed to the jury. *See Foster v. Purdue Univ. Chapter, the Beta Mu of Beta Theta Pi*, 567 N.E.2d 865 (Ind.Ct.App.1991). In the present case, the most compelling evidence which Johnson presents in support of her claim refers to a series of posters which National sent DTD to hang for the public to see. These posters professed that the Delta Tau Delta Fraternity was a leading fighter against date rape and alcohol abuse,[10] and they were placed, by DTD, in places where they could be seen by the public. These posters do not create an inference that National gratuitously assumed a duty. The posters did not profess to have security available as did the pamphlet in *Ember*, nor did they state that one could call National for help with problems such as date rape or alcohol abuse. This Court, therefore, while it expresses no view with regard to any other theory of liability, reverses the trial court's denial of summary judgment on the gratuitous assumption of duty theory.

## CONCLUSION

We vacate the Court of Appeals' decision and affirm the trial court in part and reverse the trial court in part.

SHEPARD, C.J., and DICKSON and BOEHM, JJ., concur.

10. For example, one poster stated that, "It may come as a surprise, but one of the most active organizations in the fight against alcohol abuse, date rape and hazing is a fraternity." (R. at

435.) Another stated that, "while date rape may be all too commonplace an occurrence, there's absolutely no place for it at Delta Tau Delta." (R. at 436.)

SULLIVAN, J., concurs in result without separate opinion.