## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Nov 12 2015, 6:55 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

---

ATTORNEY FOR APPELLANTS

Theodore L. Stacy
Valparaiso, Indiana

ATTORNEY FOR APPELLEE
ROBERT A. PHILLIPS D/B/A
KRUEGER'S KORNER KLUB

Matthew D. Barrett
Matthew D. Barrett, P.C.
Logansport, Indiana

ATTORNEYS FOR APPELLEE
RISNER'S OASIS, INC.

Julie R. Murzyn
Randall J. Nye
O'Neill, McFadden & Willett
Schererville, Indiana

---

# IN THE
# COURT OF APPEALS OF INDIANA

---

Jo Ann Vance and Paul Vance, as Co-Personal Representatives of the Estate of Ricky L. Vance, Deceased,

*Appellants (Defendants/Counterclaim Plaintiffs/Cross-claim Plaintiffs),*

v.

Robert A. Phillips d/b/a Krueger's Korner Klub, and

November 12, 2015

Court of Appeals Case No.
46A03-1503-CT-105

Appeal from the LaPorte Superior Court

The Honorable Kathleen B. Lang, Judge

Trial Court Cause No.
46D01-1203-CT-42

Risner's Oasis, Inc.,

*Appellees (Defendants/Cross-claim Defendants),*

Melanie Mills, as Personal Representative for the Estate of Stephen F. Mills, Deceased,[1]

*Plaintiff/Counterclaim Defendant.*

**Kirsch, Judge.**

# Case Summary

[1]    This case arises out of a single-car accident that resulted in the death of two friends, Ricky L. Vance ("Vance") and Stephen F. Mills ("Mills"). Initially, Melanie Mills, as personal representative for the Estate of Stephen F. Mills, deceased ("the Mills Estate") sued two bars that the men had patronized before the wreck on the night in question, Robert A. Phillips d/b/a Krueger's Korner Klub ("Krueger's") and Risner's Oasis, Inc. ("Risner's"), alleging liability under Indiana's Dram Shop Act. The Mills Estate also sued Jo Ann Vance and Paul Vance as co-personal representatives of the Estate of Ricky L. Vance, deceased ("the Vance Estate"), alleging that Vance was driving on the night in question, did so negligently or recklessly, and caused Mills's death. The Vance Estate counterclaimed against the Mills Estate, asserting that Mills was the driver and

---

[1] The Estate of Mills is not a party to this appeal. However, a party in the trial court is a party on appeal. Ind. App. Rule 17(A).

negligently or recklessly operated the vehicle and caused Vance's death.[2] The Vance Estate also filed cross-claims against defendant Krueger's and Risner's, alleging that each of those bars were liable to the Vance Estate based on dram shop liability for serving Vance and Mills with actual knowledge that "one or both" were visibly intoxicated.[3] *Appellant's App.* at 61-62. Krueger's and Risner's filed motions for summary judgment on the Vance Estate's dram shop claims. The trial court granted both motions.[4] The Vance Estate appeals, claiming that genuine issues of material fact exist and that the trial court erred when it granted summary judgment in favor of Krueger's and Risner's.[5]

[2] We affirm.

---

[2] The estate for each of the deceased men claims that the other man was driving when the car flipped, and each estate has filed suit against the other. A determination of who was driving is not necessary to the resolution of the summary judgment dram shop issue before us, and we do not make any determination on the matter.

[3] We note that the record indicates that the Vance Estate filed additional complaints against two more establishments, DeLams, Inc. and Koselke-Mayfield Post No. 403, alleging dram shop claims. *Appellant's Br.* at 14. According to the Chronological Case Summary, DeLams was dismissed with prejudice in September 2012. It is not clear whether Koselke remains a party to the lawsuit.

[4] After summary judgment was granted in its favor, Krueger's filed a motion requesting payment of $31,811.10 in attorney fees and costs from the Mills Estate and the Vance Estate, on the basis that the Estates' claims were frivolous, unreasonable, groundless, or in bad faith. The trial court denied Krueger's motion. Krueger's appealed that decision, and that matter is currently pending under Case No. 46A03-1408-CT-277.

[5] The trial court also entered summary judgment against the Mills Estate on its dram shop claims against Krueger's and Risner's. The Mills Estate appealed the summary judgment entered against it on the dram shop claims, and its appeal was initially filed and docketed under Case No. 46A04-1405-CT-223. However, upon motion, this court consolidated the Mills Estate's appeal with Krueger's appeal, designating the Mills Estate as Appellee/Cross-Appellant. The Mills Estate's appeal is thus currently pending under Case No. 46A03-1408-CT-277.

## Facts and Procedural History[6]

[3] On Sunday, July 10, 2011, Mills and Vance were celebrating Vance's birthday. They arrived at Krueger's, a small local tavern in LaCrosse, Indiana, between 6:45 p.m. and 7:30 p.m. There were a dozen or so patrons in Krueger's at that time. Mills and Vance each ordered a light beer from the bartender, Cheryn Klemz ("Klemz"). Another patron ordered a second round for Mills and Vance. Vance drank half or all of his second beer, but Mills did not drink any of his. After thirty to forty-five minutes, Mills and Vance left Krueger's together in Mills's vehicle. As it left the parking lot, the car "power braked," with tires squealing and smoke rolling. *Appellant's App*. at 74, 88, 102. Mills and Vance proceeded in the car to Risner's in San Pierre, Indiana.

[4] Sometime between 7:00 p.m. and 9:00 p.m., Vance and Mills entered Risner's. Vance ordered and paid for one bottle of beer, which the bartender, Stephanie Call ("Call") served him. Call was the only employee working at Risner's that night, and at times, she was also working in the kitchen. Vance's former father-in-law, Stephen Cook ("Cook"), bought Vance a second bottle of beer. Mills did not order, and Call did not serve Mills, any beer or alcohol at Risner's.

---

[6] We note that the Vance Estate's Statement of Facts section appears to refer to depositions, but fails to cite to the location in its Appendix where the cited deposition materials appear, as required by Indiana Appellate Rule 46(A)(6)(a). *See Appellant's Br*. at 5-8. Indeed, upon review, we find that some of the cited depositions are not provided to us. *See e.g.*, *Appellant's Br*. at 5 (citing to "Burger App. 31"), 7 (citing to "Kozelke at App. 32"). The record before us does not contain the Burger or Kozelke depositions.

[5] After approximately an hour, Vance and Mills left in Mills's car. Shortly thereafter, the car left the roadway, flipped a number of times, and came to rest on its roof. Mills and Vance were ejected and killed.

[6] The Mills Estate sued the Vance Estate, alleging that Vance was negligent or reckless in his operation of the vehicle resulting in the fatal crash. The Mills Estate named as defendants Krueger's and Risner's, alleging that the bars were liable under Indiana's Dram Shop Act, for serving alcohol to Vance while he was visibly intoxicated. The Vance Estate filed a counterclaim asserting that Mills was the driver and that he negligently or recklessly operated the vehicle and caused Vance's death. The Vance Estate also filed cross-claims against defendants Krueger's and Risner's, asserting dram shop liability claims.

[7] Krueger's and Risner's filed motions for summary judgment on the dram shop claims.[7] Krueger's motion asserted that it did not have actual knowledge that either Vance or Mills was visibly intoxicated at the time that Krueger's served beer to the two men, that Vance drank alcohol at Risner's after leaving Krueger's, and that Krueger's did not proximately cause the accident. In support of its motion, Krueger's designated an affidavit from bartender Klemz and deposition testimony from four patrons in Krueger's that night: (1) Larinda McCoin ("Larinda"); (2) her husband Bruce McCoin ("Bruce"); (3) Darlene "Sue" Holbrook ("Holbrook"); and (4) William Moore ("Moore") as evidence.

---

[7] We note that pages 7-9 of Krueger's motion for summary judgment (*Appellee Krueger's App.* at 26-28) is missing from the record before us.

[8]    Klemz's affidavit stated that she had been a bartender for approximately seven years at Krueger's, that she observed Mills and Vance walk into Krueger's, and that they appeared fine; that she served Mills a beer, and he drank part of it; that Vance drank the first bottle she served, then ordered and drank all or part of the second bottle of beer. Klemz stated that neither Vance nor Mills had bloodshot eyes or slurred speech, and neither of them had any trouble with balance or walking. Klemz said that Mills and Vance stayed at Krueger's for approximately forty-five minutes and then left. She observed them leaving and stated that they had no problems with walking or balance. She testified that neither Mills nor Vance appeared visibly intoxicated while at Krueger's.

[9]    Larinda's deposition stated that she and her husband, Bruce, arrived at Krueger's sometime between 4:30 and 5:30 p.m.; that Mills and Vance arrived after that time; that she observed Mills and Vance as they walked in, and that she did not see anything unusual about their demeanor. They were not loud or boisterous while at Krueger's. Mills and Vance initially sat at the bar for ten minutes or so and then sat at a table near Larinda and Bruce. She saw that Mills drank half a beer. Larinda ordered another beer for Mills and Vance, but Mills did not drink any of it. At one point, Mills asked Larinda for a ride home, stating that he was "done." *Appellant's App*. at 97. She stated Vance did not finish his second beer. She had conversations with Mills and Vance, and they seemed coherent and did not have slurred speech or bloodshot eyes. Larinda stated that the fact that Mills asked for a ride home caused her to suspect Mills was intoxicated, but Mills and Vance did not exhibit visible signs

of intoxication while at Krueger's. She said they appeared "normal" as they walked out. *Id*. at 74. She estimated that Mills and Vance were at Krueger's for about half an hour.

[10] Bruce testified in his deposition that he saw Mills and Vance as they came into Krueger's, and he did not observe anything unusual about them. He conversed with Mills and Vance, and he did not have any difficulty understanding them. They were not slurring their speech, and they were not stumbling or having difficulty walking. Bruce recalled, "They said they had been drinking" before they came to Krueger's. *Id*. at 98. Bruce said that Mills had bloodshot eyes, but Vance did not. Bruce recalled that "quite a few people" at Krueger's commented that they thought Mills was "drunk." *Id*. at 103. Mills and Vance each got a beer, and Vance finished his, but Mills did not. Bruce did not know whether Vance got a second bottle of beer. He stated that Vance was not visibly intoxicated, but he did not know whether Mills was visibly intoxicated. Bruce testified that Mills was laughing as he asked for the ride, and Larinda did not take the request as a serious one.

[11] Holbrook testified in her deposition that she observed Vance and Mills walk into Krueger's. She said they were not staggering or falling down and did not appear intoxicated when they arrived. She saw Mills and Vance order a beer. Mills received a second beer, but did not drink it. She believed Vance drank a total of one-and-a-half beers while at Kruger's. She had conversations with Mills and Vance and said they exhibited no problems with comprehension and did not slur their speech. They were not loud and did not behave

inappropriately. She saw Vance and Mills as they left, and they did not have any problems with their balance. Her opinion was that neither Vance nor Mills was visibly intoxicated while at Krueger's.

[12] Moore was at Krueger's when Mills and Vance arrived. In his deposition, he said that they did not appear intoxicated. He spoke to Mills and Vance, and neither slurred his speech. He saw Mills and Vance each drink one beer at Krueger's. He estimated that Mills and Vance were at Krueger's "[m]aybe a half hour." *Id.* at 127. He stated that Mills and Vance walked out without any problem.

[13] The Vance Estate filed a response to Krueger's motion for summary judgment and adopted certain of Krueger's designated evidence, including the depositions of Larinda, Bruce, Holbrook, Moore, and the affidavit of Klemz.[8] The Estate argued that Holbrook and Moore, Krueger's patrons, were not qualified observers because they did not have much familiarity with Mills and Vance's drinking habits or the manner each acted when sober versus when not. The Vance Estate further argued that the evidence, as a whole, was sufficient to create a question of fact as to whether Krueger's served Mills and Vance with actual knowledge of visible intoxication because there was evidence that they were drinking before they arrived, they were served one to two beers while

---

[8] From the record before us, it does not appear that the Vance Estate designated any other evidence in opposition to Krueger's motion for summary judgment.

there, Mills asked Larinda for a ride home, and the car's tires squealed and smoked as it left the premises.

[14] Risner's motion for summary judgment on the Vance Estate's dram shop claims[9] claimed that it did not serve Vance while having actual knowledge of visible intoxication and that it did not serve Mills at all. In support of its motion, Risner's designated the deposition and affidavit testimony of Larinda, Bruce, Moore, Holbrook, and Klemz, discussed above, to show that the men were not visibly intoxicated at Krueger's, before coming to Risner's. *Appellee Risner's App*. at 14-15. Risner's also designated deposition excerpts from Call, Risner's bartender on duty on the night in question; patrons Cook and his girlfriend Karen Ford ("Ford"); Risner's owner, Freda Risner ("Freda"); and employee Becky Russell ("Russell"). *Id*. at 129-30.

[15] In her deposition, Call recalled that when Vance came into the bar, he introduced himself and ordered a beer. She stated that Vance did not slur his speech and did not have bloodshot eyes, and his coordination did not appear to be impaired in any way. He was friendly, but not loud or boisterous. Vance bought one beer, and Call served it to him. Cook bought Vance a second bottle of beer; Call did not know whether Vance finished the second bottle of beer. Call stated that Vance did not appear to be visibly intoxicated at Risner's. Cook said that Vance and Mills "seemed fine." *Id*. at 156. Cook's girlfriend, Ford,

_____

[9] At the same time, Risner's filed a separate motion for summary judgment on the Mills Estate's dram shop claims.

saw no signs that Vance was drunk. *Id*. at 153-54. She said he did not have bloodshot eyes, slurred speech, and his balance was not "off" in any way. *Id*. at 153.

[16] Call stated that Mills sat at the bar, on a stool, and "he didn't really seem to talk to anyone; didn't interact with anyone." *Id*. at 138. Call said Mills's jaw "was slack," he was drooling out of one side of his mouth, one of his eyes was closed more than the other one, and he "had a half smile on his face." *Id*. at 137-38. Call estimated that Mills and Vance were in Risner's for an hour to an hour and twenty minutes. Call did not serve Mills any alcohol while he was at Risner's, nor did she see him consume any.

[17] The Vance Estate filed a response to Risner's motion for summary judgment and designated the depositions of Larinda, Bruce, Holbrook, Moore, and the affidavit of bartender Klemz. In addition, the Estate stated that it was designating "the deposition excerpts attached hereto [and] the video clip from [Risner's] camera attached here[]to."[10] *Appellant's App*. at 31. In opposing Risner's summary judgment motion, the Vance Estate argued that Mills and Vance were already intoxicated when they arrived at Risner's, that Vance had at least two beers at Risner's, that it was possible that other patrons were buying

---

[10] It is not clear to what depositions the Vance Estate was referring, as the record before us contains no attachments to the Vance Estate's Response. Although the text of the Response cites to and quotes from deposition or affidavit testimony of bar owner Freda Risner and Risner's employee, Becky Russell, *see Appellant's App*. at 33, there is no indication that the Vance Estate designated those materials to the trial court. We disregard references made by the Vance Estate to those excerpts from Freda's and Russell's depositions that were not designated below or provided to us in the appellate record.

beer for Mills and Vance while the bartender was in the kitchen, and that the two men were at Risner's for approximately two hours. Taking this evidence as a whole, it argued, a genuine issue of material fact existed on the issue of whether Risner's served Vance and Mills with actual knowledge that the men were visibly intoxicated. The Vance Estate also claimed that Risner's owner, Freda, viewed but failed to keep, or otherwise destroyed, videotaped surveillance footage that was taken by Risner's then-existing security cameras that night and asserted that Risner's thereby spoliated evidence, which created a genuine issue of material fact sufficient to preclude summary judgment in favor of Risner's.

[18] The trial court granted Krueger's and Risner's motions for summary judgment. The Vance Estate now appeals.

## Discussion and Decision

[19] On review of the grant or denial of summary judgment, our court applies the same standard as used by the trial court. *Merch. Nat'l Bank v. Simrell's Sports Bar & Grill, Inc.,* 741 N.E.2d 383, 386 (Ind. Ct. App. 2000). Summary judgment is appropriate only "if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ind. Trial Rule 56(C). We may consider only those portions of the pleadings, depositions, and any other matters specifically designated to the trial court by the parties for purposes of the motion for summary judgment. *Murdock v. Fraternal Order of Eagles*, 779 N.E.2d 964, 967

(Ind. Ct. App. 2002), *trans. denied*. We must construe all facts and any inferences reasonably derived from those facts in favor of the non-moving party. *Id*.

The party moving for summary judgment bears the burden of proving the absence of a genuine issue of material fact. *Vanderhoek v. Willy,* 728 N.E.2d 213, 215 (Ind. Ct. App. 2000). That is, when the defendant is the moving party, it must show that the undisputed facts negate at least one element of the plaintiff's cause of action or that the defendant has a factually unchallenged affirmative defense that bars the plaintiff's claim. *Pierson ex rel. Pierson v. Serv. Am. Corp.,* 9 N.E.3d 712, 714-15 (Ind. Ct. App. 2014), *trans. denied*. Thereafter, the non-moving party must set forth specific facts showing the existence of a genuine issue of material fact. *Vanderhoek*, 728 N.E.2d at 215. Thus, if the moving party demonstrates the absence of any genuine issue of fact, it is entitled to summary judgment unless the non-moving party comes forward with contrary evidence showing a triable issue for the factfinder. *Williams v. Tharp*, 914 N.E.2d 756, 761-62 (Ind. 2009).

In this case, the Vance Estate asserts that Krueger's and Risner's are liable under Indiana's Dram Shop Act because they served Mills and Vance alcohol with actual knowledge that, at the time they furnished the alcohol, the men were visibly intoxicated. Indiana Code section 7.1-5-10-15 provides:

> It is unlawful for a person to sell, barter, deliver, or give away an alcoholic beverage to another person who is in a state of

intoxication if the person knows that the other person is intoxicated.

Section 15.5 then states, in part:

> (a) As used in this section, "furnish" includes barter, deliver, sell, exchange, provide or give away.
>
> (b) A person who furnishes an alcoholic beverage to a person is not liable in a civil action for damages caused by the impairment or intoxication of the person who was furnished the alcoholic beverage unless:
>
>> (1) the person furnishing the alcoholic beverage had actual knowledge that the person to whom the alcoholic beverage was furnished was visibly intoxicated at the time the alcoholic beverage was furnished; and
>>
>> (2) the intoxication of the person to whom the alcoholic beverage was furnished was a proximate cause of the death, injury, or damage alleged in the complaint.
>
> (c) If a person who is at least twenty-one (21) years of age suffers injury or death proximately caused by the person's involuntary intoxication, the:
>
>> (1) person;
>>
>> (2) person's dependents;
>>
>> (3) person's personal representative; or
>>
>> (4) person's heirs;

> may not assert a claim for damages for personal injury or death against a person who furnished an alcoholic beverage that contributed to the person's intoxication, unless subsection (b)(1) and (b)(2) apply.

Ind. Code § 7.1-5-10-15.5. Indiana's Dram Shop Act "represents a legislative judgment that providers of alcoholic beverages should be liable for the reasonably foreseeable consequences of knowingly serving alcohol to visibly intoxicated persons." *Vanderhoek*, 728 N.E.2d at 215.

[22] "The first step . . . is to determine whether the person furnishing the alcohol had actual knowledge that they were furnishing alcohol to an intoxicated individual." *Delta Tau Delta v. Johnson*, 712 N.E.2d 968, 974 (Ind. 1999)*, declined to follow on other grounds by Paragon Family Rest. v. Bartolini,* 799 N.E.2d 1048 (Ind. 2003). In determining whether a person furnishing alcohol had actual knowledge that they were furnishing alcohol to an intoxicated person, the furnisher's knowledge must be judged by a subjective standard. *Id.* "When determining whether a furnisher of alcoholic beverages knew a person was intoxicated, we look to what and how much a person was known to have consumed, the person's behavior at the time, and the person's condition." *Vanderhoek*, 728 N.E.2d at 215. Thus, actual knowledge of the server can be inferred from indirect or circumstantial evidence. *Delta Tau Delta*, 712 N.E.2d at 974. However, where there is insufficient evidence to support actual knowledge, the issue may be resolved as a matter of law. *Id.*

## Krueger's Motion for Summary Judgment

[23] In its dram shop actions against Krueger's and Risner's, the Vance Estate claimed that Krueger's and Risner's violated the Dram Shop Act by serving "Mills and Vance" when "one or both were visibly impaired or intoxicated."[11] *Appellant's App*. at 61-63. As the movant, the burden was on Krueger's to come forward with evidence to show that it did not have actual knowledge of visible intoxication when it served Mills and Vance on the night in question. Here, Krueger's designated the affidavit of the bartender, Klemz, and deposition testimony from four patrons, Larinda, Bruce, Holbrook, and Moore. All testified that Mills and Vance carried on conversations, did not have slurred speech, and walked in and out of the bar without any problem or difficulty. Mills drank one beer or less at Krueger's, and Vance drank up to two beers. Mills and Vance were at Krueger's for not more than forty-five minutes. Klemz, the server, expressly testified that Mills and Vance did not appear visibly intoxicated; Holbrook and Moore did the same. Larinda explained that, because it was out of character for Mills to ask for a ride home, it suggested to her that he may have been intoxicated; however, Larinda stated there was

---

[11] We observe that the Vance Estate, in its Answer, denied that Vance was driving, and, consistent with that position, the Vance Estate's counterclaim against the Mills Estate asserted that Mills was negligent or reckless in driving his vehicle and caused Vance's death. *Appellant's App*. at 49, 58, 60. The Vance Estate's dram shop claims did not identify which of the two men was driving and thus who the bars ought not to have served; rather, it asserted that the bars violated the Dram Shop Act by serving both men. Because Indiana Trial Rule 8(E)(2) allows a party to plead alternative and even inconsistent theories of recovery, we will address the Vance Estate's dram shop claims as pleaded.

nothing about Mills's visible appearance that would have indicated to Klemz or others that Mills was intoxicated.

[24] We find that the evidence designated by Krueger's established that Klemz did not have actual knowledge of visible intoxication when she served the men. The burden thus shifted to the Vance Estate to show that a question of fact existed as to whether Klemz had actual knowledge. As we have recognized,

> Actual knowledge of intoxication can be inferred from indirect or circumstantial evidence such as what and how much the person was known to have consumed, the time involved, the person's behavior at the time, and the person's condition shortly after leaving.

*Vanderhoek*, 728 N.E.2d at 217 (quoting *Delta Tau Delta*, 712 N.E.2d at 974).

[25] Here, the record before us indicates that, in opposition to Krueger's motion, the Vance Estate only designated portions of the deposition testimony of Larinda, Bruce, Holbrook, and Moore, as well as the affidavit of Klemz, which had also been designated by Krueger's. *Appellant's App.* at 37. The Vance Estate relied upon Bruce's statement that the men said to him they had been drinking before they arrived and that Mills "may have been" intoxicated. *Id.* at 43. The Vance Estate also pointed to evidence that Mills did not drink any of the second beer that Larinda purchased for him, Mills stated he was "done" and asked Larinda to drive him home, and when the men left in Mills's car, the tires smoked and squealed in a reckless manner. *Id.* at 97. The Vance Estate argued that the bartender, Klemz, "had to see what the 'regulars' also saw in the behavior of

[Vance] and [Mills]," that being "bloodshot eyes, a happy birthday celebration, and wanting a ride home." *Id.* at 46. The Vance Estate urged that questions of fact remained, making summary judgment improper.

[26] Krueger's presented evidence of the bartender and four patrons to demonstrate that Klemz did not possess actual knowledge of visible intoxication, and thereby met its burden on summary judgment. The Dram Shop Act states that the furnisher of alcohol is not liable unless he or she has actual knowledge of visible intoxication of the person being served. While actual knowledge may be inferred by looking at such factors as "what and how much the person was known to have consumed, the time involved, and the person's behavior at the time," we find that, here, those factors do not create a question of fact as to whether Klemz had actual knowledge of visible intoxication when she served Mills and Vance with two or fewer beers while they were at Krueger's for approximately forty-five minutes. *Vanderhoek*, 728 N.E.2d at 217. The Vance Estate's evidence was insufficient to support an inference of actual knowledge of visible intoxication to preclude summary judgment, and we affirm the trial court's grant of summary judgment in favor of Krueger's on the Vance Estate's dram shop claims. *See Delta Tau Delta*, 712 N.E.2d at 974 (where there is insufficient evidence to support actual knowledge, issue may be resolved as matter of law).

### Risner's Motion for Summary Judgment

[27] As was the case with Krueger's, the burden was on Risner's, as the moving party, to come forward with evidence to show that it did not have actual

knowledge of visible intoxication when it served Mills and Vance on the night in question. In support of its motion, Risner's designated testimonial evidence from Kruger's bartender, Klemz, and the four Krueger's patrons discussed above, to demonstrate that Vance and Mills did not exhibit signs of intoxication at Krueger's, prior to arriving at Risner's. Risner's also designated affidavit and deposition evidence of Risner's bartender, Call, as well as the depositions of Ford and Cook, two Risner's patrons.

[28] Call testified that she did not know Mills or Vance, having never seen either of them before that night. Her affidavit and deposition testimony was that, when she served the two beers to Vance, Vance did not have slurred speech or bloodshot eyes, and his coordination did not appear impaired. Call expressly stated that Vance did not appear visibly intoxicated. The deposition statements of Cook and Ford were consistent with Call's version. Cook said they looked fine. Ford, who knew Vance well, testified in her deposition that she saw no signs that Vance was drunk; that he did not have bloodshot eyes or slurred speech while in Risner's, and that his balance was not impaired in any way. Call testified that she did not serve alcohol, or anything, to Mills, nor did the patrons see him consuming anything. Risner's met its summary judgment burden to show that Call did not have actual knowledge of visible intoxication when she served Vance and that Mills was not served any alcohol while at Risner's, and the burden shifted to the Vance Estate to show that a question of fact existed (1) as to whether Call had actual knowledge of visible intoxication

when she served Vance, and (2) as to whether Risner's served alcohol to Mills while he was there.

[29] In opposition to Risner's motion, the Vance Estate designated the deposition testimony of Larinda, Bruce, Holbrook, and Moore, and the affidavit of Klemz. In addition, the Estate designated "the deposition excerpts attached hereto [and] the video clip from [Risner's] camera attached here[]to[,]" although as we noted above, there are no "deposition excerpts" attached to the Vance Estate's pleading. *Appellant's App.* at 31. The Estate argued that its designated evidence showed that the men already were intoxicated before they arrived at Risner's, that Vance had at least two beers at Risner's, that Mills was intoxicated and drooling, that it was possible that other patrons were buying beer for Mills and Vance while the bartender was in the kitchen, and that the two men were at Risner's for approximately two hours. Taking this evidence as a whole, it argued, a genuine issue of material fact existed on the issue of whether Risner's served Vance and Mills alcohol with actual knowledge that the men were visibly intoxicated.

[30] Risner's submitted the deposition of Call that Vance did not appear visibly intoxicated on the two occasions when she served him a beer. Although a server's actual knowledge can be inferred from indirect or circumstantial evidence, *Delta Tau Delta*, 712 N.E.2d at 974, we find that the Vance Estate failed to designate evidence sufficient to create a question of fact on the issue of Call's actual knowledge when she served Vance and submitted no evidence to show or even suggest that Mills was served by anyone while at Risner's.

Although the Estate argued that, even if Call did not serve Mills, other patrons may have done so, this proposition is based on speculation and does not create a question of fact as to whether Risner's served Mills.

[31] In opposing Risner's motion for summary judgment, the Vance Estate also asserted that summary judgment was not proper because Risner's had engaged in spoliation of evidence and this precluded summary judgment in favor of Risner's. Spoliation of evidence has been defined as "'the intentional destruction, mutilation, alteration, or concealment of evidence.'"[12] *Cahoon v. Cummings*, 734 N.E.2d 535, 545 (Ind. 2000) (quoting *Black's Law Dictionary* 1409 (7th ed. 1999)); *Dawson v. Thornton's Inc.*, 19 N.E.3d 337, 340 (Ind. Ct. App. 2014), *trans. denied*. The Vance Estate's spoliation argument is based upon the fact that, subsequent to the accident and prior to litigation, Risner's replaced the surveillance system that had been in use on the night in question.

[32] The Vance Estate did not designate any evidence on the issue. In responding to Risner's motion for summary judgment, the Vance Estate stated that it was "adopting" certain evidence that had been designated by Krueger's, namely, the

---

[12] "First party" spoliation refers to spoliation of evidence by a party to the principal litigation, and "third party" spoliation refers to spoliation by a non-party. *Gribben v. Wal-Mart Stores, Inc.*, 824 N.E.2d 349, 350 (Ind. 2005). Indiana law "does not recognize an independent cause of action for intentional or negligent 'first party' spoliation of evidence." *Glotzbach v. Froman*, 854 N.E.2d 337, 338 (Ind. 2006). If spoliation by a party to a lawsuit is proved, rules of evidence permit the jury to infer that the missing evidence was unfavorable to that party. *Cahoon v. Cummings*, 734 N.E.2d 535, 545 (Ind. 2000). Other potential sanctions for spoliation include further discovery, cost-shifting, fines, special jury instructions, preclusion, and the entry of default judgment or dismissal. *Howard Reg'l Health Sys. v. Gordon*, 952 N.E.2d 182, 189 (Ind. 2011) (quotations omitted).

depositions of Larinda, Bruce, Holbrook, Moore, and the affidavit of Klemz, the bartender at Krueger's; none of such evidence addressed the surveillance system or video footage. Although the Response summarized and cited to various excerpts taken from the depositions of Freda and Russell, *Appellant's App*. at 33, the record before us fails to show that the Vance Estate designated the cited deposition excerpts of Freda or Russell as evidence.

[33] After the Vance Estate raised the spoliation claim in opposition to summary judgment, Risner's filed a supplemental designation, which included portions of the depositions of Freda and Russell, as well as Risner's interrogatory answers concerning the surveillance footage. *Appellee Risner's App*. at 129. Risner's designated evidence indicated that, the day after the accident, Freda, along with her employee Russell, viewed the July 10, 2011 video footage from the surveillance system. Freda testified that she could not see anything on the surveillance footage and that "it was completely black." *Id*. at 162, 164. She thereafter described that the images were "dark" and "blurry," and "there wasn't nothing[.]" *Id*. at 165. Russell characterized it as "a junky system" and agreed that it was "sort of [] useless." *Id*. at 180, 185. She explained that it often turned off when Risner's electricity would flicker, and "It wasn't light sensitive, so if they dimmed the lights in the evenings, as we always do, you couldn't see anything." *Id*. at 179. Russell said she and Freda, together, viewed the footage taken on the night of the accident, stating that it was "very blurry, and hard to see things; but, I mean, we could see, you know, things."

*Id.* at 181. Russell testified that no one asked her to, and she did not, destroy or erase any recorded footage.

[34] Freda stated in her deposition that, shortly after viewing the video, she contacted Alan Kunzman ("Kunzman") of Kunzman Investigative Services, who originally installed the system, to check its operation. The system sat at Risner's unplugged and unused from July 11, 2011, until Kunzman came out to check the system in October 2011, when he advised Freda the system was unusable, having been damaged and burned, perhaps by lighting, and that it could not be repaired.[13] On October 27, 2011, Kunzman removed the entire system and replaced it with a new one, and it was Freda's belief that the recorded video footage was in the machine at the time the system was removed from Risner's. *See id.* at 167 (Freda stating, "It may still be in the old [system], I don't know."). She stated that she was unaware of the present location of the original surveillance system.

[35] The trial court found, "[T]here is no evidence to support a claim of spoliation," explaining that the Vance Estate did not present evidence that Risner's "intentionally destroyed the surveillance footage" and "it has not been established that this footage has been destroyed at all." *Appellant's App.* at 26. We agree. The Estate did not set forth specific facts showing the existence of a genuine issue of material fact. The Estate did not designate any evidence to

---

[13] Freda stated that the tape would re-write over images every thirty days; however, Freda testified that the system sat on an office floor, unplugged, until it was replaced on October 27, 2011.

support its spoliation allegation, and the evidence that was later designated by Risner's only showed that Freda and Russell attempted to view the video but found it was dark, blurry, and images were not able to be identified. There was no evidence presented that the footage was intentionally destroyed or is not available. The Vance Estate has not demonstrated that Freda had any legal obligation to retain an unusable system or, if so, for how long she was obligated to retain it. "The duty to preserve evidence has limits." *Am. Nat. Prop. Cas. Co. v. Wilmoth*, 893 N.E.2d 1068, 1071 (Ind. Ct. App. 2008) (landlord's insurer did not owe duty to plaintiffs/tenants that were injured in apartment fire to preserve burned couch), *trans. denied*. Here, Freda retained the system for several months, and when she replaced it in October 2011, no litigation was pending.[14] The Vance Estate's spoliation allegation does not identify any genuine issue of material fact that would preclude summary judgment for Risner's on the Vance Estate's dram shop claims.

Affirmed.

Najam, J., and Barnes, J., concur.

---

[14] The first lawsuit stemming from the accident was filed by the Mills Estate in May 2012.