**STATE of Indiana, Defendant-Appellant,**

v.

**Ivan N. MAUDLIN and Marietta Maudlin, Plaintiffs-Appellees.**

No. 1-380 A 68.

Court of Appeals of Indiana, First District.

Feb. 17, 1981.

Rehearing Denied March 24, 1981.

Linley E. Pearson, Atty. Gen., of Indiana, Robert F. Hassett, Deputy Atty. Gen., Indianapolis, for defendant-appellant.

Jay D. Allen, Allen & Thompson, Salem, for plaintiffs-appellees.

NEAL, Presiding Judge.

## STATEMENT OF THE CASE

Defendant-appellant State of Indiana appeals an adverse judgment entered upon a jury verdict in the Scott Circuit Court awarding plaintiffs-appellees Ivan N. and Marietta Maudlin damages for personal injury and loss of consortium resulting from an automobile mishap.

## STATEMENT OF THE FACTS

On December 23, 1972, between 9:00 and 10:00 p. m., Ivan Maudlin left his dairy farm to go to the Holiday Inn in Clarksville to be interviewed for a job as an instrumentalist, i. e. a piano player. He arrived at his destination sometime between 10:00 and 11:00 p. m. Maudlin spent about two hours in the bar-lounge and had two chats with his interviewer during the latter's fifteen minute breaks relative to the job. He consumed one or two beers during that time. Maudlin left for home at approximately 1:00 a. m. on December 24, traveling north on I65 to the Hamburg exit. After stopping for gasoline, Maudlin headed west on old State Road 60, which, unbeknownst to him, no longer coursed straight ahead to the west, but now curved south and intersected with new State Road 60. The intersection was of recent origin. The speed limit on the curve was 40 m. p. h., the road

was dry, the weather was clear, and Maudlin's headlights were on bright. Other than the speed limit sign there were no other traffic markings on the road. While rounding the curve, the wheels of his car dropped off the edge of the pavement and the car swerved sharply to the left. It went down over an embankment and into a ditch, causing Maudlin a broken back.

Indiana State Trooper Ron Robinson arrived on the scene at approximately 1:25 a. m. Robinson testified that the car was in the ditch, and that Maudlin reported he had fallen asleep. Maudlin also told Robinson that he had been drinking. He estimated his speed at 55 m. p. h. Robinson testified he smelled intoxicants on Maudlin's breath, noticed Maudlin's speech was slow and slurred, and observed Maudlin's eyes were bloodshot. Robinson concluded that drinking "possibly could have affected his driving," but, in Robinson's opinion, Maudlin's "driving ability was not impaired."

Maudlin's complaint proceeded upon the theory of negligence in designing, engineering, and marking the new curve. Among other defenses, the State relied upon contributory negligence.

## ISSUES

Three issues are presented by the State, as follows:
I. Whether the trial court erred in refusing to give the State's tendered instruction No. 3 on intoxication;
II. Whether the trial court erred in permitting Maudlin's expert witness to testify over the objection that although he was an engineer licensed to practice in another jurisdiction, he was not admitted to practice in Indiana; and
III. Whether the trial court erred in admitting evidence of prior accidents.

## DISCUSSION AND DECISION

*Issue I. Instruction on intoxication*

At the instructional stage of the trial, the State's tendered instruction No. 3 was rejected by the trial court. The instruction

was comprised of two Indiana pattern jury instructions and read as follows:

"The term 'intoxication' means a condition resulting from the drinking of alcoholic beverages which results in a person's normal faculties, either of perception, of physical ability, or of judgment, being impaired so that he no longer has the capacity to exercise the care and caution that an ordinarily prudent, sober person would exercise under like or similar circumstances.

Whether or not a person involved in the occurrence was intoxicated at the time is a proper question for the jury to consider together with other facts and circumstances in evidence in determining whether or not he was negligent or contributorily negligent. Intoxication is not an excuse for failure to act as a reasonably careful person would act. An intoxicated person is held to the same standard of care as a sober person."

The State contends that the instruction was a correct statement of the law and supported the theory of contributory negligence, and therefore the court committed reversible error in refusing to give it. Maudlin concedes that the instruction is a correct statement of the law, but claims there was a lack of sufficient evidence to justify giving the instruction.

Where the evidence fails to support an instruction the trial court may properly refuse it. *Lapsley v. Jackson*, (1979) Ind.App., 384 N.E.2d 1136. The trial court errs if it instructs upon a legal theory not supported by the evidence. *City of Evansville v. Rieber*, (1979) Ind.App., 385 N.E.2d 217. A party who makes a proper request is entitled to have an instruction based on his own theory of the case submitted to the jury if it is within the issues and there is evidence to support it. *Shoemaker v. Bowman*, (1977) Ind.App., 363 N.E.2d 1278. Further, error cannot be predicated upon the trial court's refusal to give tendered instructions if the subject matter is adequately covered by other instructions which were given. *Dahlberg v. Ogle*, (1978) 268 Ind. 30, 373 N.E.2d 159; *South Ripley Community School Corporation v. Peters*, (1979) Ind.App., 396 N.E.2d 144.

In its answer to the amended complaint, the State alleged that Maudlin had been contributorily negligent, but did not specify how. In addition to the evidence of drinking, the State presented evidence that Maudlin exceeded the speed limit at the place of the accident, fell asleep, failed to keep his car under control, and failed to keep a lookout.

The evidence relating to intoxication is set out below with some detail. Trooper Robinson testified that when he arrived at the scene he found a one-car accident; Maudlin was standing beside his car. Robinson testified Maudlin stated that he had gone to sleep while driving 55 m. p. h. in a 40 m. p. h. zone, and that he was injured. Robinson testified that he could smell alcohol on Maudlin's breath and that Maudlin's eyes were bloodshot. In response to a question on Maudlin's manner of speech, Robinson said that Maudlin had just been involved in an accident and appeared to be injured, but his manner of speaking was slow and slurred. Maudlin told Robinson that he had been drinking at the Clarksville Holiday Inn. Robinson's opinion as to the cause of the accident follows:

"I believe that the accident was caused by the driver of the vehicle going to sleep while driving, plus his speed was excessive, plus the fact of his own admission he had been drinking and it possibly could have affected his driving."

Other, relevant portions of Robinson's testimony on the subject of intoxication are as follows:

"Q. Now this conversation we have had, Ronald, about you saw his eyes were bloodshot and his speech was slurred, and he told you he had some beer. I believe in the testimony you recall all that.

A. Yes, I do.

Q. Would that have led you to believe that Mr. Maudlin was under the influence of alcohol?

A. That is a sign, but that doesn't necessarily mean that he was under the influence of alcohol, no.

\* \* \* \* \* \*

Q. During your investigation Mr. Maudlin told you, I believe voluntarily, that he had a couple of beers, is that correct, do you remember?

A. I don't remember the amount, but he said he had been drinking.

Q. And he volunteered that to you, is that correct?

A. True.

Q. Did you form an opinion about whether or not what he had to drink affected his driving ability?

A. Yes sir, I did.

Q. And had it?

A. Not in my opinion, no.

\* \* \* \* \* \*

Q. So your testimony is clear that although Mr. Maudlin had been drinking, whatever his testimony about that was, his driving ability was not influenced, is that correct?

A. Yes sir, that is correct."

Another witness, Jim Harveston, the first person on the scene of the accident, was able to testify as to the odor of alcohol on Maudlin, and that Maudlin's speech was slurred.

Maudlin's own testimony relative to intoxication can be summarized as follows: He stayed at the Holiday Inn Lounge about two hours to be interviewed by the piano player about a job. The piano player took a 15 minute break every hour and plaintiff talked to him twice. While he was in the lounge he bought two beers but did not think he drank all of them. He seldom drinks. He had no trouble driving that night, and he was not sleepy. He had difficulty standing by his car, and could not walk at the scene of the wreck because he was injured. (His spine was fractured.) He was removed from the scene on a stretcher. He told the trooper he had two beers, but denied telling the trooper he fell asleep. He felt absolutely no effect from the beer.

In assessing the above, we are of the opinion that the evidence on the consumption of alcohol most favorable to the State, together with all reasonable inferences to be drawn therefrom, does not amount to intoxication as defined in the tendered instruction No. 3. The State has introduced evidence of some drinking on the part of Maudlin. Proof of drinking is not proof of intoxication. Some evidence of impairment of driving ability must be shown before the State would be entitled to tendered instruction No. 3. Even the State's witness, Trooper Robinson, does not contend that Maudlin had an impaired driving ability. Therefore, the court did not err in refusing to give the State's tendered instruction No. 3 to the jury.

We do not intend to imply that the drinking cannot be considered by the jury as one of the totality of circumstances surrounding the accident. In this regard they were thoroughly instructed. In the State's instruction No. 2 the jury was told that every driver of a motor vehicle had a duty to exercise the care an ordinary prudent person would exercise under like circumstances, and that a failure to exercise such care constituted negligence. In the State's instruction No. 4, the jury was told that if they found Maudlin guilty of contributory negligence, which was a proximate cause of the accident, he could not recover. The State's instruction No. 6 informed the jury that speed greater than reasonable under the circumstances, and failure to drive at reduced speeds on a curve, would constitute negligence. The State's instruction No. 7 stated that a motorist had a duty to keep a lookout and to keep his vehicle under control. Instruction No. 8 tendered by the State told the jury that a driver was required to use his facilities and senses to discover danger and conditions to which he was exposed. Finally, in the State's instruction No. 10, the jury was advised of the definition of contributory negligence, its effect, and the burden of proof thereon. Instruction No. 10 concluded with the following paragraph:

"If you find from a preponderance of all the evidence that plaintiff, Ivan Maudlin, was negligent at the time and place in question and that such negligence proximately contributed to his injuries and damages, then you are warranted in returning a verdict for defendant even although [sic] you find that the defendant, State of Indiana, was also negligent."

We are of the opinion the jury was sufficiently instructed on the matter; the trial court did not err in refusing the State's instruction No. 3.

*Issue II. Expert Witness*

The State next contends that the trial court erred in permitting F. W. Petrone, a graduate engineer admitted to practice in the District of Columbia, to testify as an expert witness because Petrone was not admitted to practice in Indiana pursuant to Ind. Code 25–31–1–1 et seq. The State cites no authority in support of this contention.

■ In order for a witness to qualify as an expert, two elements must be met: (1) the subject of the inference to be drawn from the facts must be so distinctly related to some science, profession, business, or occupation as to be beyond the ken of laymen; and (2) the witness must have sufficient skill, knowledge, or experience in that field so as to make it appear that his opinion or inference will probably aid the trier in his search for the truth. *Davis v. Schneider,* (1979) Ind.App., 395 N.E.2d 283. The qualifications of a witness to testify as an expert will be set aside only where there is a manifest abuse of discretion. It is for the trial court to determine whether a witness exhibits such a degree of knowledge gained from experiments, observations, standard books, or other reliable sources, as to make it appear that his opinion is of some value. *Travelers Indemnity Co. v. Armstrong,* (1979) Ind.App., 384 N.E.2d 607; *City of Bloomington v. Holt,* (1977) 172 Ind.App. 650, 361 N.E.2d 1211.

This specific issue was decided adversely to the State in *Indianapolis Union Railway*

*v. Walker,* (1974) 162 Ind.App. 166, 318 N.E.2d 578. There we affirmed the trial court's decision to permit a professor of psychology at the University of Washington, and a specialist in the field of neuro-psychology, to testify as an expert witness in an Indiana court as to brain damage, though he was neither a neuro-surgeon nor even a licensed medical doctor, in Indiana or elsewhere. This court relied upon his experience and academic attainments as a basis for his qualifications. A similar result was reached in the following cases: *Dahlberg v. Ogle, supra* (medical doctor, not a licensed surgeon, permitted to testify as to the advisability of surgery); *State v. Vaughan,* (1962) 243 Ind. 221, 184 N.E.2d 143 (witness, not a licensed realtor, permitted to testify as to valuations in a condemnation action for a fee, although statute provided only a licensed real estate broker could appraise for a fee or commission); *Offutt v. Sheehan,* (1976) 168 Ind.App. 491, 344 N.E.2d 92 (nurse permitted to testify as to the effect of drugs on patients).

■ Acceptance of the State's position would create a provincialism which would deprive our courts of the expertise and aid of world-renowned authorities. We therefore hold that a duly licensed practitioner of a profession is not barred from testifying in a court in this state merely because he has not been admitted to practice here.

*Issue III. Other accidents*

The State claims that the trial court erred in admitting evidence of other prior accidents, but cites no authority in its brief whatever to support its claim. We remind the State of Ind. Rules of Procedure, Appellate Rule 8.3(A)(7), concerning citation of authorities; the omission of citations can be fatal to an appeal. However, we choose to address this issue on the merits.

■ Evidence is admissible to show the occurrence of prior accidents of a similar character under the same circumstances as the one involved upon the ground that it tends to show the place of the accident has been demonstrated to be unsafe and dangerous. *State v. Melloy,* (1980) Ind.App.,

398 N.E.2d 1382; *Indianapolis & Cincinnati Traction Co. v. Monfort*, (1923) 80 Ind.App. 639, 139 N.E. 677. In *State v. Melloy, supra*, this court established the rule that the admissibility of such evidence in any particular case should be left to the sound discretion of the trial court, and should be disturbed on review only for an abuse of that discretion.

In the case at bar, Mrs. Ruth Waterfill, who resided about one-fourth mile from the scene, was permitted to testify that within the first two or three months after the opening of this intersection she had observed eight or ten cars which had come to rest in that same ditch after missing the curve. All were single-car accidents; the cars were usually west-bound out of Hamburg, as Maudlin was. Furthermore, the accidents, which included three in one night, usually occurred at night and in good weather. These circumstances were markedly similar to the circumstances of Maudlin's accident, as recited in the statement of the facts. As stated in *State v. Melloy, supra*, at 1384, "Obviously a completely identical previous accident is not the only admissible one...." Here, as in *State v. Melloy*, the most relevant element of the accident, the dangerous condition itself, was the same. The fact that Mrs. Waterfill was unable to testify as to what condition each driver was in, and the speed of the respective cars, as argued by the State, does not amount to a dissimilarity sufficient to render the testimony inadmissible, and the trial court did not abuse its discretion in admitting it.

For the reasons stated above, this cause is affirmed.

Affirmed.

ROBERTSON, J., and RATLIFF, J., concur.