Dwight MURDOCK and Sharron Murdock, Appellants–Plaintiffs,

v.

FRATERNAL ORDER OF EAGLES, Glen Park Aerie No. 2413, Appellee–Defendant.

No. 45A03–0205–CV–134.

Court of Appeals of Indiana.

Dec. 16, 2002.

Rehearing Denied Feb. 19, 2003.

Steven A. Kurowski, Schererville, IN, Attorney for Appellants.

Richard P. Long, Warner & Meihofer, L.L.C., Highland, IN, Attorney for Appellee.

## OPINION

BROOK, Chief Judge.

### Case Summary

Appellants-plaintiffs Dwight Murdock ("Dwight") and Sharron Murdock (collectively, "the Murdocks") appeal the trial court's grant of summary judgment in favor of appellee-defendant Fraternal Order of Eagles, Glen Park Aerie No. 243 ("the FOE"). We affirm.

## Issue

The Murdocks raise a single issue for review, which we restate as whether the trial court erred in granting summary judgment in favor of the FOE.

## Facts and Procedural History

The facts most favorable to the Murdocks as the non-moving party indicate that at approximately 3:00 p.m. on April 30, 1999, Lindel Riley ("Riley") entered the FOE's private club in Gary, Indiana. Riley consumed two or three beers and departed in his pickup truck at approximately 5:20 p.m.

■ Approximately five minutes after Riley's departure, Dwight was jogging eastbound on the grassy north shoulder of Liverpool Road. As Dwight approached a curve in the road, he saw Riley's westbound pickup round the curve, weave sharply several times, and travel directly toward him. *See* Appellants' App. at 49.[1] Dwight attempted to get farther off the road and made eye contact with Riley before the pickup struck him at approximately thirty-five miles per hour and knocked him thirty feet into a ditch. Riley panicked and left the scene. Doris Brockus ("Brockus"), who had been following Riley's pickup for approximately one block, stopped her vehicle to assist the injured Dwight. Riley was later prosecuted for leaving the scene of an accident.[2]

On February 8, 2001, the Murdocks filed a complaint against the FOE based on Indiana Code Section 7.1–5–10–15.5 ("the Dram Shop Act"), alleging that the FOE was responsible for Dwight's injuries. The FOE moved for summary judgment. On April 1, 2002, the trial court entered an order granting the FOE's motion and reading in relevant part as follows:

A review of the designated material fails to reveal any evidence that Riley was intoxicated when this accident occurred. Even giving the [Murdocks] the benefit of any doubt on this point, as this Court is bound to do when considering the [FOE's] motion, the [Murdocks] must, nevertheless, bear the burden of proving that the [FOE] had actual knowledge that Riley was visibly intoxicated when it furnished him alcoholic beverages. See, *Vanderhoek v. Willy,* 728 N.E.2d 213 (Ind.App.2000). Even though this proof can be inferred in an appropriate case, there are not sufficient facts present in this one to begin the journey down this path. The record is devoid of any facts relevant to Riley's level of intoxication, if any, while at the [FOE's] bar, or the [FOE's] actual knowledge of this while he was at the premises of the [FOE], such that ... it could be held accountable for continuing to serve him alcohol at a point in time prior to the accident when he was "visibly intoxicated." Proof of the [FOE's] actual knowledge is a condition for recovery as set forth in I.C. 7.1–5–10–15.5. Quite simply, there is none in this case.

Appellants' App. at 7. The Murdocks now appeal.

1. This account of the accident is derived from Dwight's statement to police on May 11, 1999. Because the FOE did not move to strike this statement and the police accident report at the summary judgment stage, we deny its motion to strike these documents on appeal. *See Bankmark of Florida, Inc. v. Star Fin. Card Servs., Inc.,* 679 N.E.2d 973, 980 (Ind.Ct.App.1997) (concluding that appellant had waived any error in the admission of appellee's affidavits on summary judgment by failing to object to them).

2. The Murdocks assert that Riley pleaded guilty to leaving the scene of a personal injury accident as a Class A misdemeanor, but their citations to their appendix do not support this assertion. *See* Appellants' Br. at 2.

## Discussion and Decision

■ The Murdocks contend that the trial court erred in granting summary judgment in favor of the FOE. "A trial court's grant of summary judgment is 'clothed with a presumption of validity.'" *Luhnow v. Horn,* 760 N.E.2d 621, 625 (Ind.Ct.App.2001) (citation omitted). Although a trial court's findings and conclusions offer valuable insight into its rationale for its judgment and facilitate our review, they are not required in the summary judgment context and are not binding on us. *See SLR Plumbing & Sewer, Inc. v. Turk,* 757 N.E.2d 193, 198 (Ind.Ct. App.2001).

In reviewing a trial court's grant of summary judgment, "we apply the same standard as the trial court: we must decide whether there is a genuine issue of material fact that precludes summary judgment and whether the moving party is entitled to judgment as a matter of law," *Luhnow,* 760 N.E.2d at 625. "A genuine issue of material fact exists where the facts concerning an issue that would dispose of the litigation are in dispute or where the undisputed material facts are capable of supporting conflicting inferences on such an issue." *Vanderhoek v. Willy,* 728 N.E.2d 213, 215 (Ind.Ct.App.2000).

Once the moving party has sustained its initial burden of proving the absence of a genuine issue of material fact and the appropriateness of judgment as a matter of law, the party opposing summary judgment must respond by designating specific facts establishing a genuine issue for trial. We may consider only those portions of the pleadings, depositions, and any other matters specifically designated to the trial court by the parties for purposes of the motion for summary judgment. Any doubt as to the existence of an issue of material fact, or an inference to be drawn from the facts, must be resolved in favor of the nonmoving party. Although the nonmovant has the burden of demonstrating that the grant of summary judgment was erroneous, we carefully assess the trial court's decision to ensure that the nonmovant was not improperly denied his day in court.

*Luhnow,* 760 N.E.2d at 625 (citations omitted).

The Dram Shop Act provides in relevant part that

[a] person who furnishes an alcoholic beverage to a person is not liable in a civil action for damages caused by the impairment or intoxication of a person who was furnished the alcoholic beverage unless:

(1) the person furnishing the alcoholic beverage had actual knowledge that the person to whom the alcoholic beverage was furnished was visibly intoxicated at the time the alcoholic beverage was furnished; and

(2) the intoxication of the person to whom the alcoholic beverage was furnished was a proximate cause of the death, injury, or damage alleged in the complaint.

Ind.Code § 7.1–5–10–15.5(b).

■ The first step in establishing FOE's liability to the Murdocks under the Dram Shop Act is to determine whether the person who furnished the alcohol to Riley had actual knowledge that she was furnishing alcohol to a visibly intoxicated individual. *See Delta Tau Delta, Beta Alpha Chapter v. Johnson,* 712 N.E.2d 968, 974 (Ind.1999). "The furnisher's knowledge must be judged by a subjective standard." *Id.* In the instant case, the bartender on duty at the time Riley was drinking beer in the FOE's club stated that she had "no idea" whether she re-

membered seeing him on the day of the accident. Appellee's App. at 30.

Absent an admission that the person furnishing alcohol had actual knowledge of the other's intoxication, the trier of fact must look to reasonable inferences based upon an examination of the surrounding circumstances. Actual knowledge of intoxication can be inferred from indirect or circumstantial evidence such as "what and how much the person was known to have consumed, the time involved, the person's behavior at the time, and the person's condition shortly after leaving." Where, however, there is insufficient evidence to support actual knowledge, the issue may be resolved as a matter of law.

*Delta Tau Delta,* 712 N.E.2d at 974. (citations omitted).

As previously mentioned, Riley consumed two or three beers in approximately two hours and twenty minutes. The record is silent as to Riley's behavior at the time he was at the club, and the only evidence of his condition shortly after leaving the club relates to the few seconds leading up to his collision with Dwight on Liverpool Road. In his deposition, Riley admitted that he might have been driving

perhaps five to ten miles per hour over the posted speed limit of thirty miles per hour. *See* Appellee's App. at 18.

Brockus followed Riley's pickup for approximately one block and did not see him driving erratically before the collision. *See id.* at 25. In her deposition, Brockus stated that Riley appeared to be observing the speed limit and that he slowed down to negotiate the curve. *See id.* at 26. She further stated, "It appeared to me that either he did not release the [steering] wheel for it to come back, or he did not turn the wheel because [the truck] just went around the curve and straight at [Dwight]." *Id.* at 26–27. Brockus did not see Riley's pickup strike Dwight and could not "definitely" say that the truck was off the roadway when she saw Dwight fly into the air. *Id.* at 27.

According to Dwight, Riley's pickup rounded the curve, weaved sharply several times, and headed directly for him: "The last thing I saw before he hit me was and [sic] eye to eye contact with him, no change in his expression what so ever [sic], and he did not attempt to turn the wheel away from me after he came right at me." *Id.* at 49.[3]

---

**3.** It is interesting to note that while Dwight told police that he was "completely off the road" when Riley struck him, he also opined that if he had not gotten his "body high enough off the road that [Riley] would have ran [sic] right over the top of me." *See* Appellants' App. at 49, 51; *see also id.* at 48 ("I was on the north side of the street, running east and I always run towards traffic, so that I can kept [sic] a visual on the people coming at me. If they're getting to[o] close I can get off the road or motion to them to move over...."). The record is unclear as to Dwight's distance from the pavement when he was struck by Riley's pickup. In May 1999, Dwight told police, "But he, when [Riley] came up and hit me he was leaving the road and pointing right at me, so there was nowhere to go. The only thing I had left to do was to try and get up high enough that I

could maybe get away from him by pushing off the truck." *Id.* at 49. In his August 2001 deposition, Dwight stated, "I attempted to get, you know, farther yet off the road but there was a fence to my left which was a fence to keep cattle in and had barbed wire. Couldn't get any farther off the road." *Id.* at 23. In their appellate brief, the Murdocks claim that Dwight was six feet off the road when Riley struck him. *See* Appellants' Br. at 2. The only mention in the record of a six-foot distance, however, is a leading question posed by the Murdocks' counsel at Brockus's deposition. *See id.* at 30 ("He was on that grassy area that you've explained to Mr. Long that may be approximately six feet from the end of the asphalt to the fence; is that correct?"). We also note that Dwight's and Brockus's opinions that Riley was intoxicated

In summary, the designated evidence indicates only that Riley negotiated the curve, weaved sharply several times, stared blankly at Dwight before colliding with him, and continued westbound. The Murdocks contend that this evidence is sufficient to support an inference that the FOE's bartender had actual knowledge that Riley was visibly intoxicated when she furnished him with alcoholic beverages. In each of the dram shop cases upon which the Murdocks rely, however, the record contained evidence of the driver's level of intoxication independent of the mere fact that an accident occurred after the driver had consumed alcoholic beverages. *See Vanderhoek*, 728 N.E.2d at 214 (driver with blood-alcohol content of 0.15% failed several sobriety tests and exhibited numerous physical signs of intoxication such as "watery and bloodshot" eyes, slurred speech, and "unsteadiness in balance"); *Ward v. D & A Enter. of Clark County, Inc.*, 714 N.E.2d 728, 729 (Ind.Ct.App. 1999) (driver with blood-alcohol content of 0.22% failed nine sobriety tests); *Booker, Inc. v. Morrill*, 639 N.E.2d 358, 359 (Ind. Ct.App.1994) (driver with blood-alcohol content of 0.21% consumed "at least eight to ten beers and three shots of peppermint schnapps" before he "left the roadway, went over a six-foot embankment, traveled through a field and broke a fence, went through twelve-foot-high bushes, traveled an additional tent to fifteen feet then crashed into a brick house with sufficient force to move the structure off its foundation").

The record before us is devoid of any independent evidence of Riley's' level of intoxication.[4] Without more, we must conclude that the designated evidence is insufficient as a matter of law to support an inference that the FOE's bartender had actual knowledge that Riley was visibly intoxicated when she furnished him with alcoholic beverages. *See Delta Tau Delta*, 712 N.E.2d at 974; *see also* Ind.Code § 7.1-5-10-15.5; *Colen v. Pride Vending Serv.*, 654 N.E.2d 1159, 1163 (Ind.Ct.App. 1995) ("The failure of an inference may occur as a matter of law when the intended inference can rest on no more than speculation or conjecture."); *State v. Maudlin*, 416 N.E.2d 477, 480 ("Proof of drinking is not proof of intoxication."). We therefore affirm the trial court's grant of summary judgment in favor of the FOE.

Affirmed.

DARDEN, J., concurs.

KIRSCH, J., dissents with opinion.

KIRSCH, Judge, dissenting.

I respectfully dissent.

Under Indiana procedure, the party moving for summary judgment has the burden of establishing that no genuine issue of material fact exists. *Cole v. Gohmann*, 727 N.E.2d 1111, 1113 (Ind.Ct.App. 2000). Once the moving party has met

---

were prompted by leading questions from the Murdocks' counsel. *See id.* at 21 (Dwight's deposition; "Q. Do you have any evidence that [Riley] was intoxicated at the time of the incident? A. Do I have any evidence? Well, being at the last courtroom discussion, I believe there's evidence that he was drinking before he hit me, yes."); *id.* at 26 (Dwight's deposition; "Q. In your mind you think this was a sign of intoxication versus not paying attention at all and spacing out? A. Yes."); *id.* at 28 (Brockus's deposition; "A. [Riley]

had to have known [that he had struck Dwight] unless he was blind.... MR. KUROWSKI: Or intoxicated...: A. Or intoxicated, yes. This word was mentioned to me by the investigator.").

4. The Murdocks offer no support for their assertion that "the fact that Riley fled the scene suggests that he was visibly intoxicated." Appellants' Br. at 7.

this burden with a prima facie showing, the burden shifts to the non-moving party to establish that a genuine issue does in fact exist. *Id.* In this respect, Indiana's summary judgment procedure abruptly diverges from federal summary judgment practice. *Jarboe v. Landmark Cmty. Newspapers of Indiana, Inc.,* 644 N.E.2d 118, 123 (Ind.1994). Under the federal rule, the movant is not required to negate an opponent's claim and need only inform the court of the basis of the motion and identify relevant portions of the record that it believes demonstrate the absence of a genuine issue of material fact. *Id.* The burden then shifts to the non-moving party to make a showing sufficient to establish the existence of each challenged element upon which the non-movant has the burden of proof. *Id.* Indiana does not adhere to the federal methodology. *Id.*

Consequently, in *Jarboe,* 644 N.E.2d at 123, our supreme court held that because the defendants had not supported their motion for summary judgment with any designated evidence to establish the absence of a question of fact on an outcome-determinative issue, they were not entitled to summary judgment. It explained, "Merely alleging that the plaintiff has failed to produce evidence on each element ... is insufficient to entitle the defendant to summary judgment under Indiana law." *Id.*

Here, the evidence designated by the Eagles in support of its motion for summary judgment fails to establish the absence of a question of fact on the material issues. Specifically, it fails to establish that Riley was not visibly intoxicated at the time the Eagles served him. Rather, the Eagles point to the Murdocks' failure to come forward with evidence that Riley was visibly intoxicated. This would be sufficient under federal practice. It fails under Indiana practice, and accordingly,

the Eagles were not entitled to summary judgment on the Murdocks' claim.

We applied this rule in *Ward,* 714 N.E.2d at 729-30, another dram shop case, where we determined that the tavern that furnished alcohol was not entitled to summary judgment. In doing so, we first noted the distinction between the federal and Indiana summary judgment standards. We noted that "[u]nder Jarboe, it is [the tavern's] responsibility as the moving party to establish the non-existence of every material question of fact. Here, as long as 'it is unknown where [the patron] consumed alcohol sufficient to register a .22,' [the tavern] has failed to meet this responsibility." *Id.* at 730. We therefore concluded that a question of fact remained about whether the customer was visibly intoxicated at the time the tavern served him alcohol that precluded the granting of summary judgment. *Id.*

The majority states that "[t]he record before us is devoid of any independent evidence of Riley's level of intoxication." Op. at 969. I agree. Where I part with the majority is on the effect of this lack of evidence. As I interpret *Jarboe,* the burden is on the Eagles to designate evidence demonstrating that Riley was not intoxicated. It did not do so, and, thus I believe summary judgment is inappropriate.

Based on Indiana's summary judgment standard, I believe that the trial court erred in granting the Eagles' motion for summary judgment where designated evidence failed to establish the absence of a material question of fact. Under our summary judgment framework, to be entitled to summary judgment on the Murdocks' claim, the Eagles was required to present evidence that it lacked actual knowledge of Riley's intoxication at its social room. Like Justice Boehm in his dissent from the denial of transfer in *Lenhardt Tool & Die Co., Inc. v. Lumpe,* 722 N.E.2d 824 (Ind.

2000), I recognize that this standard may create a nearly impossible burden, effectively requiring defendants like the Eagles to prove a negative, but it is my belief that we are bound by precedent to conclude that summary judgment should be denied under the circumstances present here.