**MEMORANDUM DECISION**

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.

ATTORNEY FOR APPELLANT

Matthew D. Barrett
Matthew D. Barrett, P.C.
Logansport, Indiana

ATTORNEY FOR APPELLEE
MELANIE MILLS FOR THE
ESTATE OF STEPHEN MILLS,
DECEASED

Peter L. Boyles
Rhame & Elwood
Portage, Indiana

ATTORNEYS FOR APPELLEE
RISNER'S OASIS, INC.

Julie Murzyn
Randall J. Nye
O'Neill, McFadden & Willett
Schererville, Indiana

ATTORNEY FOR APPELLEE JO ANN
VANCE AND PAUL VANCE FOR THE
ESTATE OF RICKY L. VANCE,
DECEASED

Theodore L. Stacy
Valparaiso, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

Robert A. Phillips d/b/a
Krueger's Korner Klub,

*Appellant/Cross-Appellee (Defendant-
Cross-claim Defendant),*

v.

Melanie Mills, as Personal
Representative for the Estate of
Stephen F. Mills, Deceased,

*Appellee/Cross-Appellant (Plaintiff-
Counterclaim Defendant),*

Risner's Oasis, Inc.,

*Cross-Appellee (Defendant-Cross-claim
Defendant)*

Jo Ann Vance and Paul Vance,
as Co-Personal Representatives
for the Estate of Ricky L. Vance,
Deceased,

*Appellees (Defendants-Counterclaim
Plaintiffs-Cross-claim Plaintiffs).*

November 12, 2015

Court of Appeals Case No.
46A03-1408-CT-277

Appeal from the LaPorte Superior
Court

The Honorable Kathleen B. Lang,
Judge

Trial Court Cause No.
46D01-1203-CT-42



**Kirsch, Judge.**

# Case Summary

This case arises out of a single-car accident that resulted in the death of two friends, Stephen F. Mills ("Mills") and Ricky L. Vance ("Vance"). Melanie Mills, as personal representative for the Estate of Stephen F. Mills, deceased

("the Mills Estate") sued two bars that the men had patronized before the wreck on the night in question, Robert A. Phillips d/b/a Krueger's Korner Klub ("Krueger's") and Risner's Oasis, Inc. ("Risner's"), alleging liability under Indiana's Dram Shop Act. The Mills Estate also sued Jo Ann Vance and Paul Vance as co-personal representatives of the Estate of Ricky L. Vance, deceased ("the Vance Estate"), alleging that Vance was driving on the night in question, did so negligently or recklessly, and caused Mills's death.[1] Krueger's and Risner's each filed a motion for summary judgment on the Mills Estate's dram shop claims. The trial court granted summary judgment in favor of Krueger's and Risner's. Krueger's subsequently filed a motion requesting payment of $31,811.10 in attorney fees and costs from the Mills Estate and the Vance Estate, on the basis that the Estates' claims were frivolous, unreasonable, and groundless or in bad faith. The trial court denied Krueger's motion.

[2] Krueger's appeals and asserts that the trial court erred when it denied its request for payment of its attorney fees and costs. The Mills Estate cross-appeals and claims that the trial court erred when it granted summary judgment in favor of

---

[1] The estate for each of the deceased men claims that the other man was driving when the car flipped, and each estate has filed suit against the other. That is, the Estate of Vance filed a counter-claim against the Estate of Mills, asserting that Mills was the driver and that he negligently caused Vance's death. However, a determination of who was driving is not necessary to the resolution of the summary judgment and attorney fees issues before us, and we do not make any determination on the matter.

Krueger's and Risner's, asserting that genuine issues of material fact exist that preclude summary judgment.[2]

We affirm.

## Facts and Procedural History

On Sunday, July 10, 2011, Mills and Vance were celebrating Vance's birthday. They arrived at Krueger's, a small local tavern in LaCrosse, Indiana, between 6:45 p.m. and 7:30 p.m. There were a dozen or fewer patrons in Krueger's at that time. Mills and Vance each ordered and were served a beer by the bartender, Cheryn Klemz ("Klemz"). Another patron ordered a second round for Mills and Vance. Mills did not drink it, and Vance drank half or all of his second beer. After thirty to forty-five minutes, Mills and Vance left Krueger's together, in Mills's vehicle. The car "power braked," with tires squealing and smoke rolling, as it left the parking lot. *Appellant's App.* at 218, 232, 253. Mills and Vance then went to Risner's in San Pierre, Indiana.

Between 7:00 p.m. and 9:00 p.m., Vance and Mills entered Risner's. Vance ordered and paid for one bottle of beer from the bartender, Stephanie Call ("Call"). Call was the only employee working at Risner's that night. Vance's former father-in-law, Stephen Cook ("Cook"), bought Vance a second bottle of

---

[2] The Mills Estate's appeal was initially filed and docketed under a separate cause number (46A04-1405-CT-223), but this court subsequently consolidated it with the instant case, designating the Mills Estate as Appellee/Cross Appellant.

beer. Mills did not order, and Call did not serve Mills any beer or other alcohol.

[6] After approximately an hour Vance and Mills left in Mills's car. Shortly thereafter, the car left the roadway, flipped a number of times, and came to rest on its roof. Mills and Vance were both ejected and killed.

[7] The Mills Estate sued the Vance Estate, alleging that Vance was negligent or reckless in his operation of the vehicle, which resulted in the fatal crash. The Mills Estate also named as defendants Krueger's and Risner's, alleging that the bars were liable under Indiana's Dram Shop Act for serving alcohol to Vance while he was visibly intoxicated.[3]

[8] In February 2013, Krueger's attorney sent certified letters to the respective attorneys for the Mills Estate and the Vance Estate, stating that the discovery process showed no evidence to support a claim by either estate against Krueger's, and he requested that the claims against Krueger's be dismissed. Krueger's attorney further advised that if the claims were not dismissed, Krueger's intended to file a motion for summary judgment and would be seeking payment of attorney fees and costs. Thereafter, Kruger's and Risner's

---

[3] In May 2012, the Vance Estate filed cross-claims against defendants Krueger's and Risner's, asserting dram shop liability claims against those two bars on the basis that Krueger's and Risner's were negligent because they furnished alcohol to Mills and Vance while they were visibly intoxicated. The trial court granted summary judgment in favor of Krueger's and Risner's and against both the Estate of Mills and the Estate of Vance. The Vance Estate appealed that decision, but it is a separate appeal, currently pending under Case No. 46A03-1503-CT-105. Thus, in our decision today, we do not address the appropriateness of summary judgment entered against the Vance Estate.

filed motions for summary judgment on the dram shop claims asserted by the Mills and Vance Estates.

[9] Krueger's motion asserted that there was no evidence that Krueger's furnished alcohol to Vance with actual knowledge that he was visibly intoxicated at the time he was served. It further argued that, even if there were such evidence, Vance drank alcohol at Risner's after leaving Krueger's, and thus Krueger's did not proximately cause the accident. In support of its motion for summary judgment, Krueger's designated deposition evidence from five witnesses who observed the men at Krueger's, namely the bartender Klemz and four patrons in Krueger's that night: (1) Larinda McCoin ("Larinda"); (2) her husband Bruce McCoin ("Bruce"); (3) Darlene "Sue" Holbrook ("Holbrook"); and (4) William Moore ("Moore").

[10] As of the night in question, Klemz had been a bartender for approximately seven years at Krueger's. She testified that she observed Mills and Vance walk into Krueger's and that they appeared fine. She served Mills a beer, and he drank part of it. Vance drank the first bottle she served, then he ordered and drank all or part of the second bottle of beer. Klemz stated that neither Vance nor Mills had bloodshot eyes or slurred speech, and neither of them had any trouble with balance or walking. Klemz said that Mills and Vance stayed at Krueger's for approximately forty-five minutes. She observed them leaving and stated that they had no problems with walking or balance. She testified that neither Mills nor Vance appeared visibly intoxicated while at Krueger's.

[11] Larinda testified that she and her husband Bruce arrived at Krueger's sometime between 4:30 and 5:30 p.m., and Mills and Vance arrived after that time. She observed Mills and Vance as they walked in, and she did not see anything unusual about their demeanor. They were not loud or boisterous while at Krueger's. Mills and Vance first sat at the bar for ten minutes or so, then sat at a table near Larinda and Bruce. She saw that Mills drank half a beer. Larinda ordered another beer for Mills and Vance, but Mills did not drink any of it. She stated Vance did not finish that second beer. She had conversations with Mills and Vance, and they seemed coherent and did not have slurred speech or bloodshot eyes. She stated that Mills and Vance did not appear visibly intoxicated while at Krueger's. She said they appeared "normal" as they walked out. *Appellant's App*. at 123, 128. Larinda said that she and Bruce stayed at Krueger's about an hour a half, and Mills and Vance left sometime before she did. She estimated Mills and Vance were at Krueger's for about half an hour.

[12] Bruce likewise testified in his deposition that he saw Mills and Vance as they came into Krueger's, and he did not observe anything unusual about them. He conversed with Mills and Vance, and he did not have any difficulty understanding them. They were not slurring their speech, and they were not stumbling or having difficulty walking. Bruce recalled, "They said they had been drinking" before they came to Krueger's. *Appellee Mills Estate's App*. at 43. Mills and Vance each got a beer, and Vance finished his, but Mills did not. Bruce did not know whether Vance got a second bottle of beer. He stated that

Vance was not visibly intoxicated, but he did not know whether Mills was visibly intoxicated.

[13] Holbrook testified that she observed Vance and Mills walk into Krueger's. She said they were not staggering or falling down and did not appear intoxicated when they arrived. She saw Mills and Vance order a beer. Mills received a second beer, but did not drink it. She believed Vance drank a total of one-and-a-half beers while at Kruger's. She had conversations with Mills and Vance and said they exhibited no problems with comprehension and did not slur their speech. They were not loud and did not behave inappropriately. She saw Vance and Mills as they left, and they did not have any problems with their balance. Her opinion was that neither Vance nor Mills was visibly intoxicated while at Krueger's.

[14] Moore testified that he was at Krueger's when Mills and Vance arrived. He said that they did not appear intoxicated. He spoke to Mills and Vance, and neither slurred his speech. He saw Mills and Vance each drink one beer at Krueger's. He estimated that Mills and Vance were at Krueger's "[m]aybe a half hour." *Appellant's App.* at 176. He stated that Mills and Vance walked out without any problem.

[15] Turning to Riser's motion for summary judgment on the Mills Estate's claims, it likewise asserted that Vance was not visibly intoxicated when he was served at Risner's, and, thus, Risner's was not liable. In support of its motion for summary judgment, Risner's designated evidence included the deposition

testimony of the bartender, Call, and two witnesses who observed Vance at Risner's, Cook and his girlfriend, Karen Ford ("Ford").

[16] Call recalled that when Vance came into the bar, he introduced himself and ordered a beer. He was "bubbly and outgoing." *Appellee Risner's App*. at 28. She stated that Vance did not slur his speech or have bloodshot eyes, and his coordination did not appear to be impaired in any way. He was not loud or boisterous. Vance bought one beer, and Call served it to him. Cook bought Vance a second bottle of beer; Call did not know whether Vance finished the second bottle of beer. Mills sat at the bar, on a stool, and "he didn't really seem to talk to anyone; didn't interact with anyone." *Appellee Risner's App*. at 30. Call said Mills's jaw "was slack," one of his eyes was closed more than the other one, and he "had a half smile on his face." *Id*. at 29-30. Mills did not ask for and did not consume any alcohol while in Risner's. Cook characterized Vance and Mills as being "fine" or "all right." *Risner's App*. at 48. Ford saw no signs that Vance was drunk. *Id*. at 45. Call stated in her affidavit that Vance did not appear to be visibly intoxicated at Risner's. She estimated that Mills and Vance were in Risner's for an hour to an hour and twenty minutes. *Appellee Mills Estate's App*. at 17.

[17] The Mills Estate filed separate responses to Krueger's and Risner's motions for summary judgment and designated as evidence the statements taken by an investigator of ten individuals, including Larinda, Bruce, Holbrook, and Klemz. The Mills Estate also designated the Indiana Officer's Standard Crash Report and accompanying Case Report ("accident report") prepared by the LaPorte

County Sheriff's Department. Attached to the accident report was the LaPorte County Coroner's Office Field Report and the death certificate for Mills. In opposition to Risner's motion for summary judgment, the Mills Estate designated the same witness statements and accident report that it designated in opposition to Krueger's and also designated an affidavit of the investigator who took the witness statements, the affidavit and deposition of Call, and the deposition of Cook. The Mills Estate contended that its designated evidence created a genuine issue of material fact on the issue of whether the bars, either or both of them, served Vance with actual knowledge that he was visibly intoxicated.

[18] Krueger's and Risner's each filed motions to strike certain materials that the Mills Estate designated in opposition to their motions for summary judgment. In their motions, the bars asked the trial court to strike the unsworn statements of witnesses that were taken by an investigator and to strike the accident report, arguing that all of that evidence constituted hearsay that was inadmissible in summary judgment proceedings. The trial court granted both motions to strike and struck the accident report and the unsworn witness statements.

[19] After the trial court issued its order on the motions to strike, the Mills Estate filed a supplemental designation of evidence, submitting the deposition of Treavor Pearson ("Pearson"). Among other things, Pearson's deposition included testimony that at about 9:00 or 10:00 p.m. on the night in question, he was standing outside of his home, next to his garage, having a beer and watching traffic go by, when he saw Mills's car drive past his home. He saw an

arm out the driver's side window and opined who he believed was driving. With regard to the car, he said it was going thirty to forty miles an hour, not "accelerating" or "doing anything abnormal." *Appellee Mills Estate's App*. at 261. He only saw it for a few seconds as it drove past his home, but it did not appear to him to be weaving or moving in an erratic or unsafe manner. *Id*. at 264. His home was two to three miles from the scene of the accident. About 15-20 minutes after he saw Mills's car go by, Pearson was inside his house, but saw flashing lights through the window as emergency vehicles passed his home.

[20] The trial court held a hearing on Krueger's and Risner's motions for summary judgment and thereafter issued its order granting both motions. The trial court concluded that the evidence before it was that Vance did not appear visibly intoxicated to the Krueger's bartender or the four patrons who were there and observed him and that there was no evidence that Krueger's served Vance with actual knowledge that he was visibly intoxicated. It also found that there was no evidence that Vance was visibly intoxicated at Risner's or that Risner's served Vance with actual knowledge that Vance was visibly intoxicated. "Because there was no actual knowledge of intoxication by either Krueger's or Risner's, liability cannot attach. Accordingly, the issue of proximate cause need not be reached." *Appellant's App*. at 465.

[21] Following the ruling, Krueger's filed its motion for attorney fees and costs, seeking $31,811.10 from Mills and Vance. The trial court denied the motion. Krueger now appeals the denial of its request for attorney fees and costs, and

the Estate of Mills cross-appeals, asserting that summary judgment in favor of Krueger's and Risner's was error.

# Discussion and Decision

## I. Summary Judgment

On review of the grant or denial of summary judgment, our court applies the same standard as used by the trial court. *Merch. Nat'l Bank v. Simrell's Sports Bar & Grill, Inc.,* 741 N.E.2d 383, 386 (Ind. Ct. App. 2000). Summary judgment is appropriate only "if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ind. Trial Rule 56(C). We may consider only those portions of the pleadings, depositions, and any other matters specifically designated to the trial court by the parties for purposes of the motion for summary judgment. *Murdock v. Fraternal Order of Eagles*, 779 N.E.2d 964, 967 Ind. Ct. App. 2002), *trans. denied*. We must construe all facts and any inferences reasonably derived from those facts in favor of the non-moving party. *Id*.

The party moving for summary judgment bears the burden of proving the absence of a genuine issue of material fact. *Vanderhoek v. Willy,* 728 N.E.2d 213, 215 (Ind. Ct. App. 2000). That is, when the defendant is the moving party, it must show that the undisputed facts negate at least one element of the plaintiff's cause of action or that the defendant has a factually unchallenged affirmative defense that bars the plaintiff's claim. *Pierson ex rel. Pierson v. Serv.*

*Am. Corp.,* 9 N.E.3d 712, 714-15 (Ind. Ct. App. 2014), *trans. denied.* Thereafter, the non-moving party must set forth specific facts showing the existence of a genuine issue of material fact. *Vanderhoek*, 728 N.E.2d at 215. Thus, if the moving party demonstrates the absence of any genuine issue of fact, it is entitled to summary judgment unless the non-moving party comes forward with contrary evidence showing a triable issue for the factfinder. *Williams v. Tharp*, 914 N.E.2d 756, 761-62 (Ind. 2009).

[24] In this case, the Mills Estate asserts that Krueger's and Risner's are liable under Indiana's Dram Shop Act because they served Vance with knowledge that, at the time they served him, he was visibly intoxicated. Indiana Code section 7.1-5-10-15 provides:

> It is unlawful for a person to sell, barter, deliver, or give away an alcoholic beverage to another person who is in a state of intoxication if the person knows that the other person is intoxicated.

Section 15.5 then states, in part:

> (a) As used in this section, "furnish" includes barter, deliver, sell, exchange, provide or give away.

> (b) A person who furnishes an alcoholic beverage to a person is not liable in a civil action for damages caused by the impairment or intoxication of the person who was furnished the alcoholic beverage unless:

>> (1) the person furnishing the alcoholic beverage had actual knowledge that the person to whom the alcoholic beverage

was furnished was visibly intoxicated at the time the alcoholic beverage was furnished; and

(2) the intoxication of the person to whom the alcoholic beverage was furnished was a proximate cause of the death, injury, or damage alleged in the complaint.

(c) If a person who is at least twenty-one (21) years of age suffers injury or death proximately caused by the person's involuntary intoxication, the:

(1) person;

(2) person's dependents;

(3) person's personal representative; or

(4) person's heirs;

may not assert a claim for damages for personal injury or death against a person who furnished an alcoholic beverage that contributed to the person's intoxication, unless subsection (b)(1) and (b)(2) apply.

Ind. Code § 7.1-5-10-15.5. Indiana's Dram Shop Act "represents a legislative judgment that providers of alcoholic beverages should be liable for the reasonably foreseeable consequences of knowingly serving alcohol to visibly intoxicated persons." *Vanderhoek*, 728 N.E.2d at 215.

[25] In determining whether a person furnishing alcohol had actual knowledge that they were furnishing alcohol to an intoxicated person, the furnisher's

knowledge must be judged by a subjective standard. *Delta Tau Delta v. Johnson*, 712 N.E.2d 968, 975 (Ind. 1999), *declined to follow on other grounds by Paragon Family Rest. v. Bartolini,* 799 N.E.2d 1048 (Ind. 2003). "When determining whether a furnisher of alcoholic beverages knew a person was intoxicated, we look to what and how much a person was known to have consumed, the person's behavior at the time, and the person's condition." *Vanderhoek*, 728 N.E.2d at 215. Thus, actual knowledge of the server can be inferred from indirect or circumstantial evidence. *Delta Tau Delta*, 712 N.E.2d at 974. However, where there is insufficient evidence to support actual knowledge, the issue may be resolved as a matter of law. *Id*.

### A. Krueger's Motion for Summary Judgment

The Mills Estate's claim against Krueger's was based on the allegation that Vance was visibly intoxicated at the time he was served beer at Krueger's. In seeking summary judgment, Krueger's designated deposition testimony from, among others, bartender Klemz. She stated that she saw Vance and Mills walk in, she served them one to two beers, she saw them walk out, and she observed no problems with slurred speech, bloodshot eyes, or balance. She specifically testified that Vance did not appear visibly intoxicated. Krueger's also designated deposition testimony from four witnesses who observed Vance and Mills while they were in Krueger's: Larinda, Bruce, Holbrook, and Moore. The testimony of these witnesses was consistent with that of Klemz. According to them, Vance did not have slurred speech, bloodshot eyes, or trouble with balance that night. He walked in and out of Kruger's without any problem. He

was not rude or boisterous while he was there. Each stated that Vance was not visibly intoxicated at the time Klemz served beer to him.

[27] Krueger's designated evidence established the absence of a genuine issue of fact as to whether Krueger's had actual knowledge of Vance being visibly intoxicated at the time that Krueger's served him. At that point, the burden shifted to the Mills Estate to establish the existence of a genuine issue of material fact as to whether Krueger's possessed actual knowledge that Vance was visibly intoxicated at the time that Krueger's served him alcohol. We recognize,

> Actual knowledge of intoxication can be inferred from indirect or circumstantial evidence such as what and how much the person was known to have consumed, the time involved, the person's behavior at the time, and the person's condition shortly after leaving.

*Vanderhoek*, 728 N.E.2d at 217 (quoting *Delta Tau Delta*, 712 N.E.2d at 974).

[28] Here, the Mills Estate argues that it designated evidence from which a reasonable inference of actual knowledge of intoxication can be drawn. It points to evidence that Vance and Mills had been drinking before arriving at Krueger's, that they were served and consumed beers during the short period of time that they were at Krueger's, and that upon being served his second beer at Krueger's, Mills stated that he wanted to leave and asked Larinda to drive him home, a request that she did not take seriously. The Mills Estate further argues that its designated evidence showed that when they left Krueger's, Vance was

driving and was doing so recklessly.  From this, the Mills Estate argues, that "the reasonable inference is that Vance was intoxicated prior to being served at [] Krueger's."[4]  *Mills Estate's Br*. at 10.  We do not agree.  Whether Mills was intoxicated and asked for a ride home has no bearing on whether Vance was visibly intoxicated at the time he was served alcohol at Krueger's.  The evidence is that Vance was served, at most, two beers at Krueger's, and the evidence is not consistent as to how much he drank of the second one.  As we have recognized, "proof of drinking is not proof of intoxication."  *Murdock*, 779 N.E.2d at 969.  Vance and Mills were at Krueger's for no longer than forty-five minutes, a short period of time.  The designated evidence from the bartender and four witnesses was consistent on the proposition that Vance did not stumble, slur, have bloodshot eyes, or show outward signs of visible intoxication.  There was no admissible evidence presented of Vance's level of intoxication or blood alcohol concentration at the scene of the accident.  *Compare Vanderhoek*, 728 N.E.2d at 217 (where shortly after leaving establishment, driver failed field sobriety tests and had BAC of .15%, trier of fact could infer that provider had actual knowledge of his intoxication at time he was served); *Ward v. D & A Enters. of Clark Cnty.,* 714 N.E.2d 728, 730 (Ind. Ct. App. 1999) (after motorist spent seventy-five minutes at tavern, and, at scene of accident, he failed sobriety tests and registered .22% on breathalyzer,

---

[4] We note, while the Mills Estate refers to the blood alcohol content of Vance following the accident, *Mills Estate's Br*. at 10, that information was stricken and is not to be considered in the summary judgment determination.  The accident report was the only piece of designated evidence that included the blood alcohol content of Vance at or near the time of the accident.

question of fact existed whether motorist was visibly intoxicated at time he was served). Considering only the admissible evidence designated in opposition to the motions for summary judgment, there is no genuine issues of fact on the issue of whether Krueger's served Vance with actual knowledge of visible intoxication, and the trial court properly granted summary judgment in favor of Krueger's on the Mills Estate's dram shop claims. *See Murdock*, 779 N.E.2d at 969 (summary judgment for provider affirmed where driver consumed two or three beers in approximately two hours, server had no recollection of serving him that day, record was silent as to his behavior at the club, and record was devoid of any independent evidence of driver's level of intoxication).

[29] Because we affirm the trial court's grant of summary judgment on the basis that Krueger's did not serve Vance with actual knowledge of visible intoxication, we do not reach the issue whether Krueger's proximately caused the accident in order to be liable under the Dram Shop Act. Ind. Code § 7.1-5-10-15.5.

### B. Risner's Motion for Summary Judgment

[30] Risner's asserts that its designated evidence establishes that Risner's did not have actual knowledge that Vance was visibly intoxicated when it served him beer on the night in question. Risner's submitted evidence from the bartender and four patrons at Krueger's, discussed above, for the proposition that Vance did not exhibit signs of intoxication while at Krueger's. It also designated evidence of the bartender and patrons at Risner's. Risner's bartender, Call, did not know Mills or Vance and had never seen either of them before that night. *Risner's App.* at 29. Her affidavit and deposition testimony indicated that, when

she served beer to Vance, he did not have slurred speech, he did not have bloodshot eyes, and his coordination did not appear impaired. Call stated that he did not appear visibly intoxicated. *Appellee Mills Estate's App*. at 17; *Appellee Risner's App*. at 28. The deposition testimonies of Cook and Ford were consistent with Call's version. Ford, who knew Vance well, testified in her deposition that Vance did not have bloodshot eyes or slurred speech while in Risner's, and his balance was not "off" in any way.[5] *Appellee Risner's Br*. at 4. Ford saw no signs that Vance was drunk. *Appellee Risner's App*. at 47-48. With regard to Mills, Call testified that, upon seeing him seated at the bar, she noticed that "his jaw was slack," "one of his eyes closed more than the other one, and "[h]e was drooling out of the side of his mouth." *Appellee Risner's App*. at 29. She wondered about the reason for his appearance, but she never had to assess whether to serve him because he never ordered a drink. Mills and Vance left Risner's after approximately one hour and not more than an hour and twenty minutes. While there, neither Vance nor Mills was boisterous or belligerent. No one complained about their behavior. We find, as did the trial court, that this evidence, established an absence of any genuine issue of material fact as to whether Risner's served Vance while having actual knowledge that Vance was visibly intoxicated. The burden thus shifted to the Mills Estate to present evidence to show that a genuine issue of material fact

---

[5] We note that, according to Call's deposition, Ford was also a server at Risner's, but she was not working on the night in question. *Appellee Risner's App*. at 27.

remained, making summary judgment on the Mills Estate's dram shop claims inappropriate. The Mills Estate has failed to do so.

[31] While the Mills Estate argued that the circumstantial evidence was sufficient to create an inference that Call had actual knowledge of visible intoxication when she served Vance, we note that much of the evidence designated by the Mills Estate was stricken, including the accident report, the only evidence of Vance's level of intoxication at the time of the accident that occurred shortly after the men left Risner's. The remaining evidence showed that Vance consumed up to two beers at Risner's, while Mills consumed none. The men were at Risner's up to an hour and twenty minutes. The bartender and patrons stated Vance did not appear visibly intoxicated or drunk while he was there.[6] Pearson was standing outside of his home on the night in question, and he observed Mills's car drive past his home at the time that the men would have recently left Risner's, approximately ten to fifteen minutes before the accident. He stated that the car was not speeding, weaving, or driving erratically. The trial court found that the Mills Estate's designated evidence did not show the existence of a genuine issue of material fact as to whether Vance was visibly intoxicated when served at Risner's, such that it could be reasonably inferred that Call had actual knowledge of it. We agree and conclude the trial court properly granted

---

[6] Risner's argues, "[Mills] may have been intoxicated," but such evidence was "irrelevant" to the Mills Estate's claim against Risner's, both because Risner's did not serve any alcoholic drinks to Mills, and because the Mills Estate's position is that Vance, not Mills, was driving at the time of the accident. *Appellee Risner's Br.* at 8, 13.

summary judgment in favor of Risner's on the Mills Estate's dram shop claims against it.

## II. Krueger's Motion for Attorney Fees

[32]    In regard to Krueger's motion requesting payment of attorney fees and costs by the Mills Estate and the Vance Estate, we begin by noting that Indiana follows the American Rule, which provides that litigants must generally pay their own attorney's fees absent an agreement between the parties, statutory authority, or other rule to the contrary. *Smyth v. Hester,* 901 N.E.2d 25, 32 (Ind. Ct. App. 2009), *trans. denied.* Our legislature has codified an exception to this general rule and provided for fee-shifting in cases where the court finds a party has brought or pursued a frivolous, unreasonable, or groundless claim or defense, or acted in bad faith. *State Bd. of Tax Comm'rs v. Town of St. John,* 751 N.E.2d 657, 659 (Ind. 2001). The General Recovery Rule, Indiana Code section 34-52-1-1, provides in relevant part:

> (a) In all civil actions, the party recovering judgment shall recover costs, except in those cases in which a different provision is made by law.
>
> (b) In any civil action, the court may award attorney's fees as part of the cost to the prevailing party, if the court finds that either party:
>
> (1) brought the action or defense on a claim or defense that is frivolous, unreasonable, or groundless;

(2) continued to litigate the action or defense after the party's claim or defense clearly became frivolous, unreasonable, or groundless; or

(3) litigated the action in bad faith.

Because this statute is in derogation of the American Rule observed under our common law, we strictly construe its language. *D.S.I. v. Natare Corp.,* 742 N.E.2d 15, 22 (Ind. Ct. App. 2000), *trans. denied.*

[33] Whether to award attorney fees is a matter that lies within the "sound discretion" of the trial court. *Kelley v. Vigo Cnty. Sch. Corp.*, 806 N.E.2d 824, 831 (Ind. Ct. App. 2004) (citing *Malachowski v. Bank One,* 682 N.E.2d 530, 533 (Ind. 1997)), *trans. denied.* "[I]n the absence of an affirmative showing of error or abuse of discretion," we must affirm the trial court. *Id.* An abuse of discretion occurs when the trial court's award is clearly against the logic and effect of the facts and circumstances before the court. *Hill v. Davis*, 850 N.E.2d 993, 996 (Ind. Ct. App. 2006).

[34] We have previously applied the following guidelines in our review of an attorney fee claim issue:

> A claim is frivolous (a) if it is taken primarily for the purpose of harassing or maliciously injuring a person, or (b) if the lawyer is unable to make a good faith and rational argument on the merits of the action, or (c) if the lawyer is unable to support the action taken by a good faith and rational argument for the extension, modification, or reversal of existing law. A claim is unreasonable if, based on a totality of the circumstances,

including the law and facts known at the time of the filing, no reasonable attorney would consider that the claim or defense was worthy of litigation or justified. A claim is groundless if no facts exist which support the legal claim relied on and presented by the losing party.

*Smyth*, 901 N.E.2d at 33 (internal citations omitted); *see also Lockett v. Hoskins*, 960 N.E.2d 850, 853 (Ind. Ct. App. 2012). "A claim or defense is *not*, however, groundless or frivolous merely because the party loses on the merits." *Smyth*, 901 N.E.2d at 33 (emphasis in original).

[35] Krueger's asserts that the dram shop claims filed by the Mills Estate and the Vance Estate were without merit when filed. It argues, "At the time Plaintiff Mills and Counter-Plaintiff Vance filed their respective lawsuits, no credible evidence existed showing Krueger's had any dram shop liability." *Appellant's Br*. at 14. Alternatively, Krueger's argues that the discovery process revealed that there were no facts that supported the dram shop claims against Krueger's and that, under the Estates' continuing duty to evaluate their claims, the Estates should have dismissed their claims because discovery revealed that the claims were frivolous, unreasonable, or groundless. In particular, Krueger's relies on the uncontradicted testimony of bartender Klemz and the supporting testimony from four patrons that observed Mills and Vance in Krueger's.

[36] While summary judgment was granted in favor of Krueger's and against the Mills Estate and the Vance Estate's respective dram shop claims, we cannot say that their arguments were illogical or without any merit. While there was no direct evidence that bartender Klemz had actual knowledge of visible

intoxication when she served Vance, the Estates urged that circumstantial evidence about Mills and Vance before, during, and after their time at Krueger's supported an inference of actual knowledge of visible intoxication, which created a genuine issue of material fact. Based on the law and facts, we cannot conclude that a reasonable attorney would consider the dram shop claims unworthy of litigation. Furthermore, there is no evidence that either Estate pursued litigation against Krueger's primarily for the purposes of harassment or with malicious intent. Consequently, we do not conclude that the claims were frivolous. Nor do we conclude that absolutely "no facts exist which support the legal claim(s) relied on and presented by the losing party," and therefore we are not persuaded that the claims were groundless. *Smyth*, 901 N.E.2d at 33.

[37] Krueger's also argues that the Estates "brought th[e] lawsuit[s] in bad faith" and attempted to "manipulate[e] evidence" because family member(s) from each estate contacted the Sheriff's Department in an effort to clarify or change the accident report concerning the named driver of the car. *Appellant's Br.* at 15. The record before us indicates that the Mills Estate sought that the accident report be amended because, although the report reflected that Mills was the driver of the vehicle, deposition testimony from an investigating officer of the LaPorte County Sheriff's Department revealed that law enforcement was not able to determine which man was the driver of the car at the time of the accident, and the only reason that Mills was listed as the driver was because he owned the car. *Appellant's App.* at 483, 520. The Sheriff's Department declined to make any change to the accident report absent any eyewitness as to who was

driving at the time of the accident. *Id*. at 484. Member(s) of the Vance family also contacted the Sheriff's Department, a few months after the accident, asking for clarification to the accident report, for insurance purposes, on the proposition that Vance "couldn't have been driving." *Id*. at 486. Again, the Sheriff's Department declined to make any changes to the report, advising that "that's something you'll have to argue out in court." *Id*.

[38] Krueger's has failed to show that either the Mills Estate or the Vance Estate acted in bad faith. In the end, and viewing the case as a whole, we cannot conclude that the dram shop claims filed and pursued by the Mills Estate and the Vance Estate were the "sort of needless drain on the resources of the prevailing party and the judicial system" that Indiana Code section 34-52-1-1 was designed to deter. *Smyth*, 901 N.E.2d at 36 (citing *Mitchell v. Mitchell,* 695 N.E.2d 920, 925 (Ind. 1998)). In reaching our decision, we are mindful of our Supreme Court's observation that "the legal process must invite, not inhibit, the presentation of new and creative argument to enable the law to grow and evolve"; and that in reviewing an award of statutory attorney fees, we "must leave breathing room for zealous advocacy and access to the court to vindicate rights," and "be sensitive to these considerations and view claims of frivolous, unreasonable, or groundless claims or defenses with suspicion." *Mitchell,* 695 N.E.2d at 925. We find no abuse of discretion in the trial court's decision not to award payment of attorney fees and costs to Krueger's. Affirmed.

[39] Najam, J., and Barnes, J., concur.